# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| JOHN YOST and GERALD SANDERS, <br> individually and on behalf of all others <br> similarly situated, <br><br>             Plaintiffs, <br> **v.** <br><br> FIRST HORIZON NATIONAL CORP., et al., <br><br>             Defendants. | )<br>)<br>)<br>)<br>)<br>)     No. 08-2293-STA-cgc<br>)<br>)<br>)<br>) |

## ORDER CONDITIONALLY GRANTING IN PART, DENYING IN PART PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

Before the Court is Plaintiffs John Yost and Gerald Sanders's Amended Motion for Class Certification (D.E. # 123) filed on December 10, 2010.[1] Defendants filed a response in opposition (D.E. # 138) on March 3, 2011. Plaintiffs have filed a reply (D.E. # 143). For the reasons set forth below, the Motion is conditionally **GRANTED IN PART, DENIED IN PART**.

---

[1] The Court never took up Plaintiffs' initial motion for class certification (D.E. # 98) filed on January 29, 2010. On March 22, 2010, the Court granted Defendants a certificate of appealability as to another issue and administratively terminated Plaintiffs' first motion for class certification at that time. Furthermore, just prior to filing the instant Motion, Plaintiffs amended their pleadings, in part, to add Kathleen A. Brennan as a named Plaintiff (D.E. # 114). The Memorandum in Support of the Amended Motion, therefore, includes argument about her suitability as a class representative. Since the filing of Plaintiffs' opening brief, Plaintiffs have amended their pleadings yet again to remove Ms. Brennan as a Named Plaintiff (D.E. # 134). In so far as Plaintiffs' Amended Motion refers to Ms. Brennan, the Court does not consider her presence in the suit as a Named Plaintiff and potential class representative.

# BACKGROUND

Plaintiffs filed a class action suit on behalf of participants and beneficiaries of the First Horizon Corporation Savings Plan ("Plan") for violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et. seq.[2]  Plaintiffs allege that Defendants breached their fiduciary duty to the Plan by investing Plan assets in First Horizon stock and the First Funds, a family of First Horizon's proprietary mutual funds, when it was no longer prudent to do so.  Plaintiffs John Yost and Gerald Sanders were employees of Defendant First Horizon and participants in the Plan. (Pls.' Memo. in Support 3.)  Both Plaintiffs held Plan accounts invested in First Horizon Stock, and Plaintiff Sanders' account was also invested in First Funds during the relevant class periods. (*Id*.)  Defendants First Horizon; First Tennessee Bank, N.A. ("First Tennessee"); Highland Capital Management Corporation; Martin & Company, Inc.; members of First Horizon's Board of Directors; the Retirement Investment Committee and its members; and the Pension, Savings & Flexible Compensation Committee and its members are all fiduciaries of the Plan. (*Id*.)

The Plan is a participant-directed 401k plan that meets ERISA's definition of a "defined contribution plan" pursuant to 29 U.S.C. § 1002(34).  (*Id*.)  The Plan further meets the statutory definition of an individual account plan under 29 U.S.C. § 1107(d)(3). (*Id*.)  Under the terms of the Plan, participants could authorize payroll deductions as contributions to the Plan and be entitled to matching from First Horizon. (*Id*.)  The Plan's investment fiduciaries had the

---

[2] On September 30, 2009, the Court granted in part and denied in part Defendants' motion to dismiss certain claims.  Even though Plaintiffs have since amended their pleadings, the Court set forth the factual allegations supporting Plaintiffs' class claims more fully in that Order. *See* Order Granting in Part, Denying in Part Defs.' Mot. Dismiss, Sept. 30, 2009, 2-29.

responsibility to select different investment options for participant contributions. (*Id.*)  During

the proposed class period, the Plan provided participants with up to eleven different investment

vehicles in which to allocate their pre-tax contributions.  (Defs.' Resp. in Opp'n 5.)  The

investment options included money market funds, mutual funds (including, until June 5, 2006,

the First Funds), and the First Horizon National Corporation Stock Fund (the "FHN Stock

Fund"). (*Id.*)  The FHN Stock Fund was comprised primarily of First Horizon common stock and

qualified as an employee stock ownership plan ("ESOP") under ERISA Section 407(d)(6), 29

U.S.C. § 1107(d)(6). (*Id.*)

Plaintiffs have alleged that the FHN Stock Fund was an imprudent retirement investment

from at least January 1, 2006 through July 14, 2008 ("FHN Stock Claims Period") because (1)

First Horizon had assumed massive new risks of default and loss through its banking practices in

an effort to fuel national growth; (2) the Company lacked the credit review, audit, or accounting

infrastructure to adequately identify and manage those risks, and (3) it did not properly reserve

for the losses on its risky products, so that the Plan was purchasing shares of FHN Stock at an

inflated price. (*Id.* at 1-2.)  According to Plaintiffs, First Horizon was taking undue risks related

to the lowering of its underwriting standards; the scope and circumstances of its involvement

with subprime, Alt-A, second-lien loans (*i.e.*, home equity loans), and "One Time Close" home

building loans; its growing dependence on real estate construction loans fueled by the increase in

subprime mortgages; problems with its accounting for loan losses and loan reserves which did

not reflect its higher risk business plan; and its increasing use of off-balance sheet transactions

and proprietary securitizations of loans which did not comply with government-sponsored entity

("GSE") conforming mortgage guidelines. (*Id.* at 2.)

Despite these risks, until January 1, 2008, all participants (except First Horizon Home Loan Corporation participants) were required to invest in the FHN Stock Fund in order to receive matching contributions. (*Id.* at 5.)  Matching contributions equaled 50% of the first 1% to 6% of participant pre-tax contributions invested in the FHN Stock Fund. (*Id.*)  Even under the amended Plan effective January 1, 2008, all matching and savings contributions had to be made to the FHN Stock Fund. (*Id.*)  Defendants emphasize that at all times, participants were free to reallocate their matching contributions to any other Plan investment fund. (Defs.' Resp. in Opp'n 6.)  Plan participants were repeatedly informed that Company stock was the riskiest investment option within the Plan and were encouraged to diversify their investments. (*Id.*)  Plaintiffs assert that Defendants knew or should have known that participants did not regularly transfer shares out of the FHN Stock Fund so as to diversify their retirement accounts. (Pls.' Memo. in Support 5.)  According to statistics gathered in February 2005, the average number of exchanges for all participants in and out of any investment fund selection for the prior year was 0.5 percent. (*Id.*)

As for the First Funds, these were a family of mutual funds under the management of First Horizon's wholly-owned subsidiaries. (*Id.* at 6.)  Plaintiffs assert that from May 9, 2002 through June 5, 2006 ("First Funds Claims Period"), the Plan's fiduciaries maintained investment offerings in the First Funds even though most of those funds under-performed their peers. (*Id.* at 1.)  Plan fiduciaries did not select the First Funds because they were prudent retirement investments but rather because offering such funds generated fees to First Horizon and its affiliates and helped maintain the viability of the funds. (*Id.*)  Defendants posit that participants were advised in multiple communications that the First Funds were proprietary funds offered by First Tennessee Bank and that First Tennessee would receive certain fees in

connection with investments in the First Funds. (Defs.' Resp. in Opp'n 10-11.)  Information received by participants also illustrated that two of the four First Funds were not the only investment option available in a particular category. (*Id*. at 11.)  Defendants allege that throughout the proposed class Period, few participants invested heavily in the First Funds. (*Id*.) In fact, the vast majority of participants invested less than 5% of their total assets in any one of the four First Funds. (*Id*.)

Plaintiffs have summarized their remaining claims against Defendants as follows: first, Plaintiffs allege that Defendants First Horizon, its directors, the Pension, Savings and Flexible Compensation Committee, the Retirement Investment Committee and the members of these committees breached their fiduciary duty by investing Plan assets in First Horizon National ("FHN") stock during the Class Period even when they knew that it was no longer prudent to do so, due to the worsening of First Horizon's financial condition that resulted from its shift to riskier business practices beginning in 2003. (Pls.' Am. Mot. Class Certific. ¶ 3.)  Plaintiffs seek recovery for injuries suffered by the Plan as a result of these Defendants' acquisition of FHN stock and failures to take action to protect Plan assets invested in FHN stock, between January 1, 2006 and July 14, 2008. (*Id*.)

Second, Plaintiffs allege that Defendants First Horizon, its directors, First Tennessee Bank, N.A., Highland Capital Management Corporation, Martin & Company, Inc., the Retirement Investment Committee and its members chose the First Funds through an imprudent selection process tainted by conflict and retained the First Funds, at class members' expense, because it benefitted First Horizon and its affiliates. (*Id*. ¶ 4.)  Plaintiffs seek recovery for injuries suffered by the Plan as a result of Defendants' imprudent and disloyal selection and

retention of the First Funds from May 9, 2002 (i.e., six years prior to the filing of this action) through mid-2006 when the First Funds were removed from the Plan. (*Id*.)

Third, Plaintiffs allege that Defendants First Horizon, its directors and First Tennessee Bank, N.A. failed to monitor other fiduciaries with fiduciary obligations to the Plan in violation of their duties to monitor under ERISA. (*Id*. ¶ 5.)  Plaintiffs seek recovery for injuries suffered by the Plan as a result of Defendants' breach of their duty to monitor other Plan fiduciaries.

Fourth, Plaintiffs allege that all Defendants enabled the breaches of their co-fiduciaries through their conduct and omissions, and knowingly failed to take reasonable steps to remedy the known breaches of fiduciary duties by other Plan fiduciaries. (*Id*. ¶ 6.)  Plaintiffs seek recovery for the injuries suffered by the Plan as a result of Defendants' co-fiduciary breaches. (*Id*.)

In their Amended Motion for Class Certification, Plaintiffs seek certification of a Class pursuant to Federal Rule of Civil Procedure 23, the Class to be defined as follows:

> Participants in and beneficiaries of the First Horizon National Corporation Savings Plan ("Plan"), excluding Defendants, whose accounts in the Plan were invested in First Horizon common stock between January 1, 2006 and July 14, 2008, and/or First Horizon's proprietary mutual or money market funds—the First Funds— between May 9, 2002 and June 5, 2006.

Further, Plaintiffs seek certification of the following claims on behalf of the Class:

• Count I: failure to prudently and loyally manage the Plan's investment in FHN Stock in violation of ERISA § 404;

• Count II: breaches of duties of loyalty and prudence by causing the Plan to invest in First Funds in violation of ERISA § 404;

• Count IV: failure to monitor Plan fiduciaries in violation of ERISA § 404;[3] and

• Count V: breach of co-fiduciary duties in violation of ERISA § 405.

Plaintiffs argue that all of the requirements of Federal Rule of Civil Procedure 23(a) are satisfied in this case. First, Plaintiffs have alleged that the class in this case may number 15,000 members who are located throughout the United States. Thus, the class is sufficiently numerous so that joinder would be impracticable. Second, Plaintiffs have raised a number of common legal issues that go to Defendants' fiduciary duty to the Plan itself, not just the Plan participants and beneficiaries. Third, Plaintiffs assert that their claims are typical of those of the class members. Plaintiffs claims for breach of fiduciary duty are based on the same facts that give rise to the claims of the class and all are based on the same legal theories. Finally, Plaintiffs will adequately represent the interests of the class. Plaintiffs have legal claims on behalf of the Plan, and Plaintiffs' claims are identical to those of the class members. Like the class they seek to represent, Plaintiffs have suffered damages as a result of Defendants' alleged breaches of duty. Therefore, Plaintiffs believe that they have satisfied Rule 23(a)'s requirements.

Furthermore, Plaintiffs argue that at least one of Rule 23(b)'s tests for maintaining a class action is met. Plaintiffs contend that class treatment is warranted under Rule 23(b)(1) and (2). Relying on the Advisory Committee Notes to Rule 23, Plaintiffs state that certification under Rule 23(b)(1)(B) is most appropriate in this case. If class treatment is not granted, the adjudication of one class member's claims on behalf of the Plan will "as a practical matter"

---

[3] The Court previously dismissed Count III of the First Amended Complaint, which alleged that Defendants had breached their fiduciary duty by failing to provide complete and accurate information to participants and beneficiaries. Order Granting in Part, Denying in Part Defs.' Mot. Dismiss, Sept. 30, 2009, 44-52.

conclude the rights of other class members.  ERISA breach of fiduciary duty claims like Plaintiffs are particularly well-suited for class certification under Rule 23(b)(1)(B).  Plaintiffs also argue that there is a strong likelihood of additional lawsuits against Defendants, justifying certification under Rule 23(b)(1)(A).  Class treatment is proper under Rule 23(b)(2) because Plaintiffs seek equitable relief for breach of a fiduciary duty and any money damages will be equitable in nature.  Finally, Plaintiffs brief the standard for certification under Rule 23(b)(3) and seek certification under that paragraph only in the alternative to certification under paragraphs (1) or (2).  Having satisfied Rule 23(a) and at least one paragraph under Rule 23(b), Plaintiffs maintain that class certification is appropriate in this case.

In response, Defendants argue that Plaintiffs have failed to carry their burden showing that class certification is warranted.  While not contesting Rule 23(a) numerosity and commonality, Defendants do attack the adequacy of the Named Plaintiffs to represent the class and the typicality of their claims.  With respect to Plaintiffs' adequacy, Defendants assert that Yost and Sanders are too disinterested and ill-informed to represent the class.  Many class members, perhaps hundreds of them, have signed releases, disclaiming any cause of action under ERISA they might have against Defendants.  Yost and Sanders never signed such a release.  Defendants also emphasize a number of conflicts of interests within the class.  For example, Defendants have submitted expert analysis showing that many class members actually made money on their First Horizon stock and First Funds holdings during the class period.  For the same reasons, class members will have different "optimal imprudent dates," the point in time when it became imprudent to offer First Horizon stock or the First Funds as investments.  Defendants submit that each class member's claim for damages will vary depending on which

"imprudent date" is selected.  Based on these conflicts of interest, Defendants contend that Plaintiffs cannot adequately represent the interests of the class.

As for typicality, Defendants argue that the class claims present a number of atypical issues.  For instance, each class member exercised individual control over his account investments.  As such, each account will reflect the particular risk tolerance and decision-making of each account holder, an inherently atypical analysis.  Defendants argue further that each class member's individualized control will form the basis of an ERISA § 404(c) defense, an absolute defense to any claim for breach of fiduciary duty.  Defendants point out that the relevant Department of Labor regulation describes § 404(c) as "an individual, transactional" defense.  Defendants reiterate that because some class members have signed releases of their claims, the Court will also have to consider whether to enforce each release.  The facts and circumstances of each signed release will vary from class member to class member, making the analysis of that defense atypical as well.

Finally, Defendants argue that Plaintiffs have failed to meet any of the tests of Rule 23(b).  The conflicts of interest that would defeat adequacy also preclude certification under Rule 23(b)(1)(B), and there has been no showing of why an action brought by one participant would somehow dispose of other participants' claims.  Defendants deny that they would suffer prejudice under Rule 23(b)(1)(A)  if separate actions were permitted.  Additionally, class certification under Rule 23(b)(1)(A) is not proper here because Plaintiffs seek predominantly money damages, not equitable relief.  Likewise, Plaintiffs' demand for predominantly, if not entirely, money damages, rules out certification under Rule 23(b)(2).  Plaintiffs have not satisfied Rule 23(b)(3)'s predominance and superiority requirements for certification under that

paragraph.  Therefore, even if the Court concluded that Plaintiffs had met Rule 23 (a)'s prerequisites, they are not entitled to class certification under Rule 23(b).

Plaintiffs have filed a reply in support of their Motion.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 23 governs class action suits including the question of class certification.  Before certifying a class, the Court's task is to conduct a "rigorous analysis" of the requirements of Rule 23.[4]  Under Rule 23(a), four prerequisites must be met in order to certify the class: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[5]  A proposed class must satisfy all four of the prerequisites of Rule 23(a) and, after having met those factors, at least one of the three tests set forth in Rule 23(b).[6]  "Rule 23 does not require a district court, in deciding whether to certify a class, to inquire into the merits of the plaintiff's suit."[7]  A plaintiff seeking to

---

[4] *Gen. Tel. Co. Of SW. v. Falcon,* 457 U.S. 147, 161, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982).

[5] Fed. R. Civ. P. 23(a).

[6] *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996)).

[7] *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 560 (6th Cir. 2007) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006).

Case 2:08-cv-02293-STA-cgc   Document 147   Filed 06/03/11   Page 11 of 41   PageID 6128

represent a class, however, has the "burden 'to establish his right' to class certification."[8]

**ANALYSIS**

The Court holds that upon rigorous analysis of the facts and issues presented, class certification is proper in this case.  Plaintiffs have shown that all four elements of Rule 23(a) are satisfied and that at least one of three conditions of Rule 23(b) is satisfied.  Even though Defendants have only contested the typicality and adequacy requirements, the Court will consider each of the Rule 23(a) prerequisites in turn, including the initial question of whether the Named Plaintiffs John Yost and Gerald Sanders have standing to bring their claims on behalf of the proposed class.

## I.      Standing

Standing is "the threshold question in every federal case."[9]  The Supreme Court has stated that the standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into "a vehicle for the vindication of the value interests of concerned bystanders."[10]  The party invoking federal subject matter jurisdiction bears the burden to demonstrate all of the elements of Article III standing including injury-in-fact.[11] "The Article III standing requirements apply equally to class actions.  The class representative must allege an individual, personal injury in order to seek relief on behalf of himself or any other

---

[8] *Alkire v. Irving,* 330 F.3d 802, 820 (6th Cir. 2003) (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 522 (6th Cir. 1976)).

[9] *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

[10] *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 473, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982) (quoting *United States v. SCRAP,* 412 U.S. 669, 687, 93 S. Ct. 2405, 2416, 37 L. Ed. 2d 254 (1973)).

[11] *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008).

member of the class."[12]

Additionally, Plaintiffs must satisfy the standing requirements to bring their ERISA

claims on behalf of the Plan.  ERISA governs employee benefit plans and establishes both the

obligations of plan fiduciaries and the remedies for any breach of those duties.[13]  ERISA permits

civil actions to be brought "by the Secretary [of Labor], or by a participant, beneficiary or

fiduciary for appropriate relief under section 409 (29 U.S.C. § 1109)."[14]  ERISA § 409(a)

addresses liability for breaches of fiduciary duty and states in part:

> Any person who is a fiduciary with respect to a plan who breaches *any* of the
> responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be
> personally liable to make good to such plan *any losses to the plan* resulting from *each
> such breach,* and to restore to such plan any profits of such fiduciary which have been
> made through use of assets of the plan by the fiduciary, and shall be subject to such other
> equitable or remedial relief as the court may deem appropriate . . . .[15]

The Sixth Circuit has held that a plan participant has standing to bring a claim under § 502(a)(2)

on behalf of the Plan itself.[16]  However, "[m]erely because Plaintiffs claim that they are suing on

behalf of their respective ERISA plans does not change the fact that they must also establish

individual standing."[17]  An individual plan participant asserting a § 502(a)(2) claim on behalf of

an ERISA plan must still demonstrate an actual individual injury to the participant's interests in

---

[12] *Sutton v. St. Jude Med. S.C., Inc.,* 419 F.3d 568, 570 (6th Cir. 2005).

[13] *Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 676 (6th Cir. 2008).

[14] *See* ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

[15] *Tullis*, 515 F.3d at 677 (quoting ERISA § 409(a), 29 U.S.C. § 1109(a)) (emphasis in
original).

[16] *Id.*

[17] *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608-09 (6th Cir. 2007).

the plan.[18]  Otherwise, Article III will not permit a plan participant who has suffered "no injury in fact from suing to enforce ERISA fiduciary duties on behalf of the Plan."[19]

The Court holds that both Yost and Sanders have standing to seek relief on behalf of the Plan and a class of plaintiffs whose Plan accounts included First Horizon common stock during the class period.  Both Yost and Sanders were Plan participants with investments in First Horizon stock during the proposed class period.  Both Plaintiffs have alleged that they suffered actual individual injuries to their interests in the Plan.  As a result, both Yost and Sanders can demonstrate the requisite injury-in-fact to bring their own personal claims concerning First Horizon common stock.  Therefore, the Named Plaintiffs have standing to represent a class of plaintiffs who invested in First Horizon stock during the class period.

As for the First Funds claims, the Court holds that only Sanders can satisfy the individual injury-in-fact element of Article III standing.  It is undisputed that Sanders held the First Funds in his Plan account during the class period.  Should the proposed class prove their First Funds claims and recover damages, the recovery would go to the Plan and then be allocated to the individual accounts of participants like Sanders who held First Funds.[20]  Thus, Sanders has standing to represent a class of plaintiffs who invested Plan assets in the First Funds during the class period.  Yost, on the other hand, never had any holdings in the First Funds.  It is axiomatic

---

[18] *Id*. (citing *Harley v. Minn. Mining and Mfg. Co.*, 284 F.3d 901, 906-07 (8th Cir. 2002)).

[19] *Id*. (quoting *Harley*, 284 F.3d at 906-07).

[20] *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256, 128 S. Ct. 1020, 1026 (2008); *Tullis*, 515 F.3d at 680 ("If the plaintiffs are successful in their case, any assets recovered from the defendant would first be paid into the plans then allocated to their individual accounts, and ultimately paid to them in the form of benefits.").

then that Yost did not suffer the alleged injury-in-fact and does not have standing to sue for any breach of fiduciary duty as to the selection or retention of First Funds as an investment option in the Plan.[21]  Therefore, the Court concludes that Yost lacks standing to represent such a class.

Nevertheless, Yost's lack of standing to represent a class of First Funds investors does not defeat Plaintiffs' Motion.  Plaintiffs Yost and Sanders propose to represent a class of plaintiffs who held Plan investments in First Horizon stock "and/or" the First Funds.  Because Plaintiffs have defined the proposed class in the disjunctive, the Court finds that the better course is to divide the proposed class into two separate classes, one class composed of plaintiffs with claims based on First Horizon stock and the second of plaintiffs with claims based on the First Funds.  Having resolved the initial standing inquiry, the Court now turns to Rule 23's requirements for class certification.

## I.     Rule 23(a) Prerequisites

### A.     *Numerosity*

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable.  The Sixth Circuit has held that there is "no specific number" that will or will not render joinder impracticable.[22]  A potential class may satisfy the numerosity requirement simply based on its size.[23]  The Third Amended Complaint alleges that the potential class in this case

---

[21] Defendants have also correctly raised questions about whether Yost's claims are typical of the claims of the proposed class of First Funds investors and whether Yost is an adequate representative of such a class.  Because the Court resolves these issues at this stage of the analysis, the Court finds it unnecessary to consider Yost's typicality or adequacy to represent the First Funds class.

[22] *Am. Med. Sys.*, 75 F.3d at 1079.

[23] *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (finding potential class of 800 members "a number well beyond the point that joinder would be feasible").

may total as many as 15,000 members.[24]  Defendants have not challenged this allegation or

Plaintiffs' assertion that the Rule 23(a) numerosity requirement is met.   Therefore, the Court

finds that the potential class in this case is so numerous that joinder of all members is

impracticable.

>    **B.**    ***Commonality***

Likewise, Defendants do not challenge certification on the basis of the potential class's

commonality.  Rule 23(a)(2) requires that there be questions of law or fact common to the

class.[25]  The Sixth Circuit has explained that a single common issue will satisfy this Rule 23(a)

element.[26]  "The interests and claims of the various Plaintiffs need not be identical.  Rather, the

commonality test is met when there is at least one issue whose resolution will affect all or a

significant number of the putative class members."[27]  Put another way, the resolution of a

common issue must advance the litigation.[28]  Here Plaintiffs have argued that resolution of the

following legal issues will be necessary in order to advance the litigation: (1) whether all or

some of Defendants are fiduciaries of the Plan under ERISA; (2) whether the Defendants

responsible for the continued acquisition and investment in First Horizon stock breached their

fiduciary obligations of prudence and loyalty; (3) whether the Defendants responsible for the

selection and retention of the First Funds employed a prudent investment selection process or

---

[24] *See* Third Am. Compl. ¶ 326.

[25] Fed. R. Civ. P. 23(a)(2).

[26] *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) ("Rule 23(a) simply requires *a* common question of law or fact.") (emphasis in original)).

[27] *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998).

[28] *Sprague*, 133 F.3d at 397.

15

whether they violated their duties of prudence and loyalty by selecting the First Funds because they were proprietary to and fee-generating for First Horizon and its affiliates; (4) whether the Company and the Director Defendants breached their fiduciary duties to the Plan and participants by failing to prudently monitor the selection, investment practices, procedures and other activities of other Plan fiduciaries; (5) whether Defendants, by failing to comply with their fiduciary duties under ERISA § 404(a)(1), enabled or caused their co-fiduciaries to violate ERISA and, despite knowledge thereof, failed to make reasonable efforts to remedy them; (6) whether the Plan suffered losses as a result of Defendants' fiduciary breaches. The Court holds that the resolution of these common issues of law will be necessary to advance this suit. Therefore, the Court concludes that Plaintiffs have met their burden to satisfy the Rule 23(a) commonality requirement.

### C.    *Typicality*

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class.[29] A representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."[30] The inquiry for the Court is "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct."[31] The Supreme Court has noted that Rule 23(a)'s commonality and

---

[29] Fed. R. Civ. P. 23(a)(3).

[30] *Am. Med. Sys.*, 75 F.3d at 1082 (quoting 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3.13, at 3-76 (3d ed. 1992)).

[31] *Sprague*, 133 F.3d at 399 (citing *Am. Med. Sys.*, 75 F.3d at 1082).

16

typicality requirements "tend to merge."[32]  A class representative is not typical "when a plaintiff

can prove his own claim but not necessarily have proved anybody else's claim."[33]  Importantly,

the Sixth Circuit has cautioned that "a representative's claim need not always involve the same

facts or law, provided there is a common element of fact or law."[34]  Finally, a plaintiff's burden

to establish typicality is not onerous.[35]

 The Court holds that Plaintiffs' legal claims are typical of the claims of the class they

seek to represent.  As an initial matter, Plaintiffs' claims and the claims of the putative class are

brought on behalf of the Plan.  Plaintiffs have alleged that Defendants failed to prudently and

loyally manage the Plan's investment in FHN Stock as well as breached their duties of loyalty

and prudence by causing the Plan to invest in First Funds.[36]  ERISA § 409(a) makes breaching

fiduciaries liable to the ERISA plan itself, rather than to individual participants or beneficiaries.

ERISA § 502(a) permits a plan beneficiary or participant to bring suit under § 409(a) on behalf

of the Plan for the recovery of losses to the Plan.[37]  ERISA § 502(a)(2) is available to

participants and beneficiaries in defined-benefit and defined-contribution plans alike.[38]  For

---

[32] *Falcon*, 457 U.S. at 158 n.13.

[33] *Beattie*, 511 F.3d at 561 (citations omitted).

[34] *Id.* (citing *Senter*, 532 F.2d at 525 n.31).

[35] *Bittinger*, 123 F.3d at 884.

[36] Plaintiffs' other claims for failure to monitor Plan fiduciaries and breaches of co-fiduciary duty derive from these alleged primary breaches.  *See* Order Granting in Part, Denying in Part Defs.' Mot. Dismiss, Sept. 30, 2009, 53-55.

[37] *See* 29 U.S.C. § 1132(a)(2).

[38] *LaRue*, 552 U.S. at 256, 128 S. Ct. 1020, 1026 (2008).

defined-contribution plans, the Supreme Court has explained that "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."[39]  Any recovery to the Plan under § 502(a) then would be allocated to individual accounts.[40]

        While not dispositive, the fact that the claims of Plaintiffs and the proposed class members are actually claims on behalf of the Plan is relevant to the Court's typicality analysis. In order to prove their claims on behalf of the Plan, Plaintiffs Yost and Sanders will generally have to show that Defendants breached a fiduciary duty to the Plan and that the breach resulted in harm to Plan assets.[41]  As Plaintiffs correctly argue, their proof of breach and causation will largely focus on "the same events or practices or course of conduct that gives rise to the claims of other class members," namely, the conduct of the Defendant-fiduciaries and not the unique, individual acts of the class members.  The Court has already identified a number of common issues of law presented.  The resolution of these common issues will not only advance the litigation but largely establish Plaintiffs' proof of their claims on the Plan's behalf.  For example,

_____

        [39] *Id.*  The Seventh Circuit recently described class certification of § 502(a)(2) claims on behalf of participants in defined-contribution plans as a "complex" question.  *Spano v. The Boeing Co.*, 633 F.3d 574, 582 (7th Cir. 2011).

        [40] *Larue*, 552 U.S. at 262-63 (Thomas, J., concurring) ("Because a defined contribution plan is essentially the sum of its parts, losses attributable to the account of an individual participant are necessarily 'losses to the plan' for purposes of § 409(a).  Accordingly, when a participant sustains losses to his individual account as a result of a fiduciary breach, the plan's aggregate assets are likewise diminished by the same amount, and § 502(a)(2) permits that participant to recover such losses on behalf of the plan."); *Tullis*, 515 F.3d at 680 ("whether one, ten, or 1,000 participants are affected, the loss occurs to the plan" and any recovery pursuant to § 502(a) "would first be paid into the plan, then allocated to their individual accounts").

        [41] *See Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995).

in so far as Plaintiffs prove the following, they will prove their case for breach of fiduciary duty owed to the Plan: (1) that all or some of Defendants are fiduciaries of the Plan under ERISA; (2) that the Defendants responsible for the continued acquisition and investment in FHN Stock breached their fiduciary obligations of prudence and loyalty; (3) that the Defendants responsible for the selection and retention of the First Funds violated their duties of prudence and loyalty by selecting the First Funds because they were proprietary to and fee-generating for First Horizon and its affiliates; (4) that the Company and the Director Defendants breached their fiduciary duties to the Plan and participants by failing to prudently monitor the selection, investment practices, procedures and other activities of other Plan fiduciaries; (5) that Defendants, by failing to comply with their fiduciary duties under ERISA § 404(a)(1), enabled or caused their co-fiduciaries to violate ERISA and, despite knowledge thereof, failed to make reasonable efforts to remedy them; and (6) that the Plan suffered losses as a result of Defendants' fiduciary breaches. In light of the fact that Plaintiffs bring their claims on behalf of the Plan, Plaintiffs' success in proving these common issues of law on behalf of the Plan will in due course prove the breach-of-fiduciary-duty claims of other Plan participants as well.  Therefore, the Court holds that Plaintiffs have carried their burden to show that their claims are typical of the claims of the class they propose to represent.

Defendants have presented essentially two arguments attacking the typicality of Plaintiffs' claims, neither of which the Court finds convincing.  First, Defendants assert that Plaintiffs' claims are not typical of the class claims because each participant's investments choices and claims for damages will be unique.  Defendants highlight that the Plan offered a variety of investment options and argue that each participant exercised individual control over

his or her account.  It follows that each participant allocated assets in unique ways and will have to prove unique damages flowing from the alleged breaches.  The Court is not persuaded that these concerns render the Named Plaintiffs' claims atypical.  The Sixth Circuit has repeatedly held that representative claims "need not always involve the same facts or law" as the claims of the class in order to be typical.[42]  This is particularly true where the measure of each class member's damages will depend on facts and circumstances unique to that plaintiff.[43]  Therefore, the fact that class members may be subject to an individual analysis of damages does not defeat typicality.

In a second, related argument, Defendants contend that ERISA § 404(c)'s safe-harbor provides them with an "individual, transactional" defense to Plaintiffs' breach of fiduciary duty claims that renders the Named Plaintiffs' claims atypical.  ERISA § 404(c), 29 U.S.C. § 1104(c), is titled "Control over assets by participant or beneficiary" and states in part:

(1) In the case of a pension plan which provides for individual accounts and permits a

---

[42] *E.g. Beattie*, 511 F.3d at 561; *Bittinger,* 123 F.3d at 884 ("That the evidence varies from plaintiff to plaintiff would not affect this basic claim (though the district court correctly notes that individual estoppel claims might be affected)."); *Am. Med. Sys.,* 75 F.3d at 1083; *Senter*, 532 F.2d at 525 n.31 (citations omitted).  *See also Shanehchian v. Macy's, Inc.*, No. 1:07-cv-00828, 2011 WL 883659, at *6-7 (S.D. Ohio Mar. 10, 2011); *Rankin v. Rots*, 220 F.R.D. 511, 518 (E.D. Mich. 2004) ("Typicality may exist where there is a very strong similarity of legal theories, even if substantial factual distinctions exist between the named and unnamed class members.").

[43] *E.g. Beattie*, 511 F.3d at 562 (holding that factual differences in class claims, even where some class members benefitted from the defendant's conduct, "go[] only to the issue of damages and do[] not preclude a finding that the typicality requirement is satisfied"); *Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004) (holding that "individual damage determinations" did not defeat class typicality); *Bittinger,* 123 F.3d at 884-85 ("Though the level of claimed injury may vary throughout the class -a common feature of class actions routinely dealt with at a remedial phase- the basic injury asserted is the same: Tecumseh violated the terms of the collective bargaining agreements by unilaterally terminating fully-funded lifetime benefits.").

participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary).

> (A) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and

> (B) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control.

Defendants cite in support DOL regulation 29 C.F.R. § 2550.404c-1(c)(2), explaining that "whether a participant . . . has exercised independent control in fact with respect to a transaction depends on the facts and circumstances of the particular case."  Defendants argue that the § 404(c) defense will require a separate analysis of the facts of each participant's account and decision-making to determine whether that plaintiff exercised "independent control" over the account.  As a practical matter, these separate determinations over thousands of participant accounts make the defense inherently atypical and preclude class certification.

The Court disagrees that a potential § 404(c) defense makes the Named Plaintiffs' claims atypical in this case.  Many courts have considered similar arguments and found that the applicability of § 404(c), as a defense on the merits, is not relevant at the class certification stage.[44]  The Court finds this approach more consistent with the Sixth Circuit's general standard

---

[44] *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604-605 (3d Cir. 2009) ("Given that it is an ERISA § 502(a)(2) claim brought on behalf of the Plan and alleging breaches of fiduciary duty on the part of defendants that will, if true, be the same with respect to every class member, . . . the § 404(c) defense is not relevant."); *Lively v. Dynegy, Inc.*, No. 05-cv-00063-MJR, 2007 WL 685861, at *11 (S.D. Ill. Mar. 2, 2007) (expressing "some skepticism about the validity of a defense under ERISA § 404(c)" but declining to reach the issue on a motion for class certification); *Rogers v. Baxter Int'l Inc.*, No. 04 C 6476, 2006 WL 794734, at *5 n.4 (N.D. Ill. Mar. 22, 2006) ("The court notes that the parties dispute whether an ERISA section 404 defense in fact will be available in this case. The merits of the parties' arguments on this issue are not properly before the court at this time and the court does not address the issue."); *In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 421 (N.D. Okla. 2005) ("whether the

of review for Rule 23 motions for class certification.[45]  Therefore, the Court declines to consider the merits of any § 404(c) defense at the class certification stage.  Moreover, even if the Court were inclined to consider the effect a merits defense might have on class certification, it is far from clear that the § 404(c) safe harbor is available in cases like this one.  Relying on a DOL footnote interpreting § 404(c) and its accompanying regulations,[46] many courts have concluded that the § 404(c) safe harbor defense is not available against claims that ERISA plan fiduciaries imprudently selected or retained certain investment options.[47]  While it need not reach the issue

Plan falls under § 404(c) is subject to disagreement between the parties, and that issue is not properly before the Court" on a motion for class certification).

[45] *See Eisen*, 417 U.S. at 177, 94 S. Ct. 2140, 2152 ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Beattie*, 511 F.3d at 560 ("Lastly, Rule 23 does not require a district court, in deciding whether to certify a class, to inquire into the merits of the plaintiff's suit."); *Daffin*, 458 F.3d at 553 (rejecting consideration of the merits of a defense on a motion for class certification).  *See also Schering Plough*, 589 F.3d at 605 n.23 (declining to reach the merits of § 404(c) issue at the class certification stage).

[46] *Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 404(c) Plans )*, 57 Fed.Reg. 46906, 46924 n.27 (Oct. 13, 1992).  The footnote to the regulations reads

> [T]he Department points out that the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA § 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant[]'s direction of such plan.

[47] *Howell v. Motorola, Inc.*, 633 F.3d 552, 567 (7th Cir. 2011) ("[T]he selection of plan investment options and the decision to continue offering a particular investment vehicle are acts to which fiduciary duties attach, and [] the safe harbor is not available for such acts."); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 (4th Cir. 2007) (in light of the DOL footnote to the regulation, § 404(c)'s "safe harbor provision does not apply to a fiduciary's decisions to select and maintain certain investment options within a participant-driven 401(k)" and "although section 404(c) does limit a fiduciary's liability for losses that occur when participants make poor

22

at this juncture, the Court simply emphasizes that the rejection of the § 404(c) safe harbor as a

defense in cases such as the one at bar appears to be the majority view.  The parties have not

actually placed this issue before the Court, and the Court finds it unnecessary to answer the

question for purposes of this Motion.  Defendants rely heavily on the Fifth Circuit's conclusion

in *Langbecker v. Electronic Data Systems Corporation*.[48]  The Court does not find *Langbecker*

persuasive.  The precise holding in *Langbecker* was that a possible § 404(c) safe harbor defense

was available in a § 502(a)(2) suit brought on behalf of an ERISA plan, a minority view in this

Court's opinion, and was therefore relevant to a Rule 23(a) typicality analysis.[49]  The Court finds

_____

choices from a satisfactory menu of options, it does not insulate a fiduciary from liability for
assembling an imprudent menu in the first instance."); *In re YRC Worldwide, Inc. ERISA Litig.*,
No. 09-2593, 2011 WL 1457288, at * 3-4 (D. Kan. Apr. 15, 2011) ("The court, then, strikes
defendants' section 404(c) defense to the extent that defense is aimed at plaintiffs' prudence
claims."); *In re Am. Int'l Group, Inc. ERISA Litig. II*, No. 08 Civ. 5722, 2011 WL 1226459, at *4
(S.D.N.Y. Mar. 31, 2011) ("Claims of imprudent selection and maintenance of particular
investment options are not foreclosed as a matter of law by ERISA section 404(c) in the context
of a participant-directed plan structure."); *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d
345, 359-60 (S.D.N.Y. 2009) ("The [DOL] regulation is controlling."); *In re Tyco Int'l Ltd.
Multidistrict Litig.*, 606 F. Supp. 2d 166, 169 (D.N.H. 2009) ("I conclude that defendants are not
entitled to a section 404(c) defense in this case."); *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d
1213, 1232 (N.D. Cal. 2008) ("The DOL has taken a clear position that § 404(c) does not shield
a party from liability for claims of imprudent selection of Plan investment options."); *Boeckman
v. A.G. Edwards, Inc.*, No. 05-658-GPM, 2007 WL 4225740, at *6 (S.D. Ill. Aug. 31, 2007)
(collecting cases); *Beesley v. Int'l Paper Co.*, No. 06-cv-703-DRH, 2007 WL 2458228, at *3
(S.D. Ill. Aug. 24, 2007) (The "majority of courts to have interpreted ERISA § 404(c), 29 U.S.C.
§ 1104(c), have adopted the DOL's position.").

[48] *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 309-313 (5th Cir. 2007) (rejecting
the lower court's ruling that "as a separate entity, the Plan should not be subject to a defense that
can only apply to particular participants and particular transactions" and concluding that the
DOL footnote in question was not entitled to *Chevron* deference).  *See also Renfro v. Unisys
Corp.*, No. 07-2098, 2010 WL 1688540, at *8 (E.D. Pa. Aug. 26, 2010) (relying on *In re Unisys
Sav. Plan Litig.*, 74 F.3d 420 (3d Cir. 1996)).

[49] *Langbecker*, 476 F.3d at 313 ("Because the district court incorrectly eliminated the §
404(c) defense from its evaluation of the suitability of the allegations on appeal for class
treatment, we must vacate and remand for further consideration of the extent to which § 404(c)

*Langbecker* at odds with the Sixth Circuit case law rejecting consideration of merits defenses at the class certification stage.  For these reasons, the Court rejects Defendants' arguments about § 404(c).

Defendants have raised an additional argument against typicality that some potential class members have signed releases of any ERISA claims they might have.[50]  Defendants address the same argument about the releases to the fourth element of Rule 23(a), Plaintiffs' adequacy to represent the class.  This particular theory arguably goes more to supposed class conflicts, an aspect of the adequacy of a class representative and not necessarily the typicality of the representative's claims.  In any event, the Court will consider Defendants' objections concerning the releases below.

### D.      Adequacy

Under Rule 23(a)(4), Plaintiffs finally must demonstrate that as class representatives they will fairly and adequately represent and protect the interests of the class.[51]  The adequacy prerequisite requires analysis of two distinct criteria: "the representative must have common interests with unnamed members of the class," and "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."[52]  The adequacy

---

decisions by participants undermine the feasibility of class action treatment.").  This Court would further note that the Fifth Circuit did not conclude that § 404(c) would defeat typicality or adequacy, only that on remand the lower court should consider the defense's impact on class certification.

[50] *See* Defs.' Resp. in Opp'n, 30-31.

[51] Fed. R. Civ. P. 23(a)(4).

[52] *Senter*, 532 F.2d at 525.  *See also Falcon,* 457 U.S. at 157 n.13, 102 S. Ct. 2364 ("adequacy-of-representation requirement. . .  also raises concerns about the competency of class counsel and conflicts of interest"); *Int'l Union, United Auto., Aerospace, and Agric. Implement*

inquiry under the first criterion "serves to uncover conflicts of interest between named parties and the class they seek to represent."[53]  A representative's interests are antagonistic to the interests of the members of the class when there is evidence that the representative plaintiffs appear unable to "vigorously prosecute the interests of the class."[54]  The lines to differentiate adequacy of representation from other prerequisites for class certification like commonality and typicality often blur.[55]  For example, the Sixth Circuit has observed, "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members."[56]

The Court holds that Plaintiffs have met their burden to demonstrate their adequacy to represent the interests of the class in this case.  Defendants do not challenge the qualifications of

_____

*Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626-27 (6th Cir. 2007) (analyzing competency of class counsel under Rule 23(a)(4)).  *But see* Fed. R. Civ. P. 23(g), 2003 Amendments, Adv. Comm. Notes ("Until now, courts have scrutinized proposed class counsel as well as the class representative under Rule 23(a)(4). . . . Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while this subdivision [Rule 23(g)] will guide the court in assessing proposed class counsel as part of the certification decision.").

[53] *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S. Ct. 2231, 2250-51, 138 L. Ed. 2d 689 (1997).

[54] *Id.*

[55] *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998).  *See also* Herbert Newberg & Alba Conte, *Newburg on Class Actions* § 3.22, at 3-126 (3d ed. 1992) ("[T]he two factors that are now predominately recognized as the basic guidelines for the Rule 23(a)(4) prerequisite are (1) absence of conflict and (2) assurance of vigorous prosecution."); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice And Procedure* § 1768, at 326 (2d ed. 1986) ("It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent.").

[56] *Am. Med. Sys.*, 75 F.3d at 1083.

class counsel to prosecute this case.  The Court finds that proposed class counsel Ellen Doyle and Stember Feinstein Doyle Payne & Cordes, LLC are well-qualified to represent Plaintiffs and the class.  Counsel has shown that she has experience litigating a number of ERISA class actions similar to the case at bar.  Therefore, the Court concludes that this adequacy criterion is satisfied.

As for any conflicts of interest, the Court holds that Plaintiffs have demonstrated that they will vigorously prosecute claims on behalf of the class and do not have interests antagonistic to those of the putative class.  The Court has concluded that the Named Plaintiffs' claims present common questions of law that are typical of the claims of the proposed class members in this case.  The Court has further emphasized that Plaintiffs' claims as well as all claims of the putative class are brought not individually but on behalf of the Plan.  The Court finds that the interests of Plaintiffs Yost and Sanders are aligned with the interests of other class members in pursuing these claims.  Like members of the class, Plaintiffs Yost and Sanders have an interest in establishing the breaches of fiduciary duty Defendants owed the Plan and obtaining recovery for Plan losses.  Like members of the class, Plaintiffs Yost and Sanders held First Horizon stock during the class period, and Plaintiff Sanders held shares of First Funds as well.  Like members of the class, Plaintiffs allege that the Defendant-fiduciaries breached their duties to the Plan when they knew or should have known that the investments were no longer suitable options for Plan participants.  Based on their common theories against Defendants and their common interests in recovering Plan assets, "there is every reason to believe" that Plaintiffs "will vigorously prosecute the interests of the class."[57]  Therefore, the Court holds that Plaintiffs have met their burden to show that they will fairly and adequately represent and protect the

---

[57] *Beattie*, 511 F.3d at 563.

interests of the class.

Defendants have raised a number of arguments about the adequacy of Plaintiffs' representation. First, Defendants assert that Plaintiffs Yost and Sanders are too disinterested and ill-informed to serve as class representatives. Defendants rely on the deposition testimony of each Named Plaintiff to argue that neither possesses a basic understanding of the claims set forth in their pleadings. Defendants further show that Plaintiff Yost did not even hold any First Funds shares in his account and that Plaintiff Sanders had little understanding of the First Funds. The Court holds that these concerns are insufficient grounds for denying Plaintiffs' Motion. The Court has already addressed Plaintiff Yost's standing to pursue the First Funds class claims and considers that issue resolved. As for Plaintiffs' general aptitude to represent the class, the Court disagrees that Plaintiffs are too flawed to serve. The record indicates that while the Named Plaintiffs cannot articulate the nuances of their ERISA claims, they have reviewed the pleadings, participated in discovery, and have a general understanding of the legal claims alleged. Above all, both Plaintiffs have stated their commitment to pursue their claims on behalf of the class. The Court holds that Plaintiffs have met their burden to show that they are not so disinterested or ill-informed as to be inadequate class representatives.

Second, Defendants argue that Plaintiff cannot adequately represent the claims of the hundreds of class members who signed releases. According to Defendants, many potential class members signed a waiver releasing any ERISA claims they might have against Defendants. Based on the evidence before the Court, the Court finds that as many as 583 of the alleged

15,000 class members signed some kind of release of ERISA claims.[58]  Defendants contend that

each release will provide a complete defense to any ERISA claim by the class member who

signed it.  Importantly, neither Named Plaintiff signed such a release.  As a result, Plaintiffs lack

standing to represent class members who did sign releases and actually have a conflict of interest

with them.  Therefore, the Court should find that Plaintiffs are not adequate class representatives

and their claims not typical of the class.

The Court holds that the releases do not defeat class certification at this stage.  As

previously discussed, Plaintiffs' claims under ERISA § 502(a)(2) are actually the claims of the

Plan itself.  In such cases many courts have concluded that a plan participant has no authority to

release a claim belonging to the plan.[59]  Courts have differed, however, on whether a class

---

[58] Defendants have submitted the declaration of Linda Bacon, First Horizon's HR
Compliance and Risk Director.  *See* Defs.' Resp., ex. 5, Bacon Decl.  Ms. Bacon states that the
list accompanying her declaration represents "a substantial portion" of the individuals who
signed releases.  Ms. Bacon has also provided a copy of First Horizon's standard release
agreement.  Upon review, the list of individuals who signed releases includes approximately 643
names.  The Court finds that some six (6) individuals in the list are actually named Defendants in
the Third Amended Complaint.  Plaintiffs's Motion defines the proposed class to exclude any
named Defendant.  Furthermore, fifty-six (56) names appear to be duplicated on the list for
unexplained reasons, including two of the named Defendants.  Therefore, adjusting for these
issues, the Court finds that for purposes of this Motion, the number of potential class members
who signed releases totals 583.

[59] *Schering Plough.*, 589 F.3d at 595; *Bowles v. Reade,* 198 F.3d 752, 759-62 (9th Cir.
1999) (concluding that the plaintiff's § 502(a)(2) claims on behalf of the plans were unaffected
by her release); *Johnson v. Couturier*, No. 2:05CV02046, 2006 WL 2943160, at *2 (E.D. Cal.
Oct. 13, 2006) ("Without the consent of the Plan (or Plan administrator/fiduciary), Johnson had
no authority or power to release the § 502(a)(2) claims."); *In re JDS Uniphase Corp. ERISA
Litig.*, 2006 WL 2597995, at *1 (N.D. Cal. Sept. 11, 2006) ("The release[] … do[es] not bar
ERISA fiduciary duty claims brought by plan beneficiaries on behalf of the plan."); *In re Aquila
ERISA Litig.*, 237 F.R.D. 202, 210 (W.D. Mo. 2006) ("[T]he instant claims in this action are
brought on behalf of the Plan pursuant to ERISA § 502(a)(2), not by ERISA plan participants
seeking individual benefits.  As a matter of law, a plan participant cannot release the Plan's
claims."); *Williams Cos.*, 231 F.R.D. at 423 ("[T]he Court notes that the claims here are brought

28

representative who did not sign a release may represent class members who did sign releases.[60]

The Sixth Circuit has held that a class composed of some members who signed releases and

others who did not will not preclude class certification.[61]  In *Bittinger*, a case which Defendants

---

on behalf of the Plan, and a participant cannot release the Plan's claims, as a matter of law.") (citation omitted); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 75 (S.D.N.Y. 2006) ("[N]umerous courts have held that under ERISA, individuals do not have the authority to release a … plan's right to recover for breaches of fiduciary duty.").

[60] *Schering Plough*, 589 F.3d at 600 ("Given the … concerns about [the proposed representative's] typicality [arising from signing release], additional inquiry is required into the factual circumstances of the members of the class and whether her release and covenant not to sue render her atypical"); *Langbecker*, 476 F.3d at 313 (reversing certification where class representatives had not signed releases but 9,000 of the 85,000 proposed class members had signed releases); *Bernard v. Gulf Oil Corp.,* 841 F.2d 547, 550-51 (5th Cir. 1988) (plaintiffs who did not sign releases lacked standing to represent employees who did sign, because "class representatives must 'possess the same interest and suffer the same injury' as the class members, . . . a plaintiff lacks standing to litigate injurious conduct to which he was not subjected."); *Melong v. Micronesian Claims Comm'n,* 643 F.2d 10, 15-16 (D.C. Cir. 1980) (affirming denial of certification where class representatives who had not signed releases where 7200 of 7500 class members had signed releases).  *But see Korn v. Franchard Corp.,* 456 F.2d 1206, 1210 (2d Cir. 1972) ("The releases are, indeed, troublesome, but we do not consider them disqualifying *in toto.*  The size of the ultimate class [will] depend on whether they are valid; plaintiff insists they are not while the defendants staunchly uphold them. That is, of course, an issue which has not yet been litigated and which is not before us . . . .); *George v. Kraft Foods Global, Inc.,* 251 F.R.D. 338 (N.D. Ill. 2008); *Williams Cos.*, 231 F.R.D. at 423; *Aquila,* 237 F.R.D. at 210-11 (commenting that the parties were free "to litigate that issue [the releases] and request decertification of class members who signed the releases" at a later time).
    The Court holds that same reasoning about releases bears on both the typicality of Plaintiffs' claims and their adequacy as class representatives.

[61] *Bittinger*, 123 F.3d at 884 ("Not all of the class members signed these releases. Again, however, this difference is not enough to justify rejection of class certification."); *Ginter v. Whirlpool Corp.*, No. 08-cv-750, 2009 WL 198746, at *7 (W.D. Mich. Jan. 23, 2009).  Other courts have found *Bittinger* distinguishable on its facts.  *See Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 319 n.7 (S.D.N.Y. 2003) ("The fact that putative class members signed releases at different times and under different circumstances distinguishes the present action from *Bittinger*. . . ."); *Thomas v. Moore USA, Inc.,* 194 F.R.D. 595, 601 n.8 (S.D. Ohio 1999) ("Notably, however, the proposed class representative in *Bittinger* had signed a release, along with two-thirds of the other class members.  Therefore, the class members' claims rose and fell along with the named plaintiff's claim.  In the present case, the Plaintiffs have not identified *any* other class members who signed a release similar to Hara's.").  In another case, the Sixth Circuit

do not address, the Sixth Circuit rejected a challenge to class certification where the class representative and the majority of the class members had signed releases of their claims.[62]   The class members in *Bittinger* were 1,200 retired employees whose lifetime insurance benefits were terminated when the collective bargaining agreement expired.[63]   About two-thirds of the retirees signed releases of their claims against the company in exchange for the company's agreement to partially fund their life and health insurance coverage.[64]   Despite the releases, all of the retirees in due course brought suit against the company.   The company argued that class members were susceptible to varied defenses because some had signed the releases, and so typicality of class claims was lacking.[65]   The Sixth Circuit held, "[T]his difference is not enough to justify rejection of class certification."[66]   The panel went on to state, "It may be that the best remedy to both the purportedly atypical claims and defenses would be to create sub-classes."[67]   The Court finds *Bittinger* persuasive, particularly its suggested remedy to create sub-classes.   Although Plaintiffs Yost and Sanders did not sign releases, the Court concludes that this fact does not create an insurmountable conflict of interest between them and the class members who did.   It remains to

---

never reached the effects of releases signed by class members on class certification, holding that the putative class representatives could not even satisfy Rule 23(a)'s commonality prerequisite. *Sprague*, 133 F.3d at 398.

[62] *Bittinger*, 123 F.3d at 884.

[63] *Id.* at 879.

[64] *Id.*

[65] *Id.* at 884.

[66] *Id.* (citations omitted) (applying the abuse of discretion standard of review to the lower court's class certification order).

[67] *Id.* (adding that "Rule 23 does not require such an action at this stage").

be seen exactly how many class members actually signed such releases.  Based on the record before the Court, it would appear that the releases apply to 583 out of 15,000 potential class members, or at a little less than 4% of the class.  More fundamentally, the Court declines to reach the merits of the release as a defense to any claims against Defendants at the class certification stage.  The parties have not even briefed the issue of whether an individual plan participant can release the ERISA claims of the Plan, and so the Court has no basis to reach that question.  For these reasons the Court concludes that the releases will not defeat class certification.

Nevertheless, the Court prefers to create a sub-class of plaintiffs who did sign releases.  It will fall to Plaintiffs to identify a class member who signed a release and who will be willing to act as a class representative for such a sub-class.  The Court will address this matter further at the conclusion of its Order.

Finally, Defendants raise a number of related arguments about various intra-class conflicts that would preclude certification of the First Horizon stock claims.[68]  For instance, Defendants posit that each Plan participant was affected in different ways by the drop in First Horizon stock: some lost money and others eventually made money.  Defendants have submitted analysis that as many as 2,048 class members actually made money on their First Horizon stock during the class period.  For similar reasons, each class member will have an optimal date on which First Horizon stock became an imprudent investment ("the optimal imprudent date"), assuming it ever did.  Defendants argue that if, as the Third Amended Complaint alleges, January 1, 2006 is the date on which First Horizon stock became an imprudent Plan investment

---

[68] Defendants have not addressed these arguments to the First Funds claims.

option, then approximately 3,000 class members with a different optimal imprudent date will

lose out on $12.6 million and $14.7 million in potential damages.  Pursuing an optimal

imprudent date to maximize recovery to the Plan will not ameliorate these conflicts of interest

among class members.  According to Defendants, these unique issues create conflicts of interests

among the Named Plaintiffs and each member of the class that should prevent class certification.


The Court disagrees with Defendants' arguments for many of the same reasons already

discussed in this Order.  The Court has emphasized throughout its analysis that the Named

Plaintiffs' claims and those of the potential class members are brought on behalf of the Plan to

vindicate fiduciary duties owed to the Plan.  Consistent with this approach, the Court finds

Defendants' concerns over multiple optimal imprudent dates for each class member irrelevant.

Many courts have rejected identical arguments that a multitude of optimal imprudent dates is

fatal to class treatment.[69]  Assuming that First Horizon stock became an imprudent investment,

---

[69] *Shanehchian*, 2011 WL 883659, at *7 ("Defendants' concern that individualized
'optimal breach dates' create intra-class conflicts is misplaced and, if heeded, would effectively
eliminate all ERISA fiduciary breach of duty class actions."); *In re First Am. Corp. ERISA Litig.*,
No. 07-01357, 2009 WL 928294, at *3 (C.D. Cal. Apr. 2, 2009); *In re Merck & Co., Inc. Sec.,
Derivative & ERISA Litig.,* MDL No. 1658, 2009 WL 331426, at *14 (D.N.J. Feb.10, 2009);
*Brieger v. Tellabs, Inc.,* 245 F.R.D. 345, 355 (N.D. Ill. 2007); *Lively*, 2007 WL 685861, at *13;
*Aquila*, 237 F.R.D. at 210 ("The Court is similarly unpersuaded by Defendants' argument that
conflicts exist between Plaintiffs and proposed Class members on the grounds that their interests
diverge with respect to the particular date upon which the Aquila Fund allegedly became an
imprudent investment."); *DiFelice v. U.S. Airways*, 235 F.R.D. 70, 79 (E.D. Va. 2006) ("the Plan
has a single 'optimal imprudence date,' and as this lawsuit is brought on behalf of the Plan,
individual participants' 'optimal imprudence dates' are irrelevant."); *Summers v. UAL Corp.
ESOP Comm.*, No. 03 c 1357, 2005 WL 1323262, at *4 (N.D. Ill. Feb. 17, 2005) ("Regardless of
whether some of the Plan participants requested that the UAL stock not be sold, Defendants,
acting in their fiduciary capacity were required to focus on the general interest of the Plan
participants as investors.").

the date on which it became imprudent is not a question for the individual members of the class to determine.  Rather the legal and factual issues will be (1) whether First Horizon was an imprudent investment option for the Plan, and if so (2) the date on which First Horizon became an imprudent investment.  Therefore, the varying interests of each class member to identify some optimal imprudent date does not render Plaintiffs inadequate as class representatives.

As for Defendants' other arguments that some class members actually made money on First Horizon stock during the class period, this assertion goes to two issues the Court has previously addressed: a class member's standing to assert an injury on behalf of the Plan and a class member's recovery of damages.  The Court has already concluded that Plaintiff Yost lacked standing to assert the First Funds claims on behalf of the class because he had not suffered any individual harm.  Likewise, in order to establish standing, each class member must demonstrate an actual individual injury to his or her interests in the plan.[70]  With respect to the First Horizon stock claim, a class member must show loss from holding First Horizon stocks in an individual account.  Any class member that cannot show an individual injury to his or her interests in the plan, i.e., because the participant made money on First Horizon stock during the class period, cannot establish standing.[71]  To the extent that a participant did suffer losses, the Court has already held that concerns about individualized damages will not defeat class certification.  Therefore, the Court disagrees that these concerns affect the adequacy of the Named Plaintiffs to represent the class.

---

[70] *Loren*, 505 F.3d at 608-09 (citing *Harley*, 284 F.3d at 906-07).

[71] *See also Beattie*, 511 F.3d at 562 (holding that factual differences in class claims, even where some class members benefitted from the defendant's conduct, "go[] only to the issue of damages . . . .").

Having concluded that Plaintiffs have satisfied their burden under Rule 23(a), the Court will now consider whether Plaintiffs have met at least one of the requirements of Rule 23(b).

## III.     Rule 23(b)

Rule 23(b) provides for three types of class action suits.[72]  "Rule 23(b) can be divided into two general categories of class actions based on the procedural requirements that they entail."[73] Rule 23(b)(1) and Rule 23(b)(2) authorize "mandatory" class actions, meaning that potential class members do not have an automatic right to notice or a right to opt out of the class.[74]  Rule 23(b)(3), concerning claims for money damages, requires notice to the class members, including the member's right to opt out of the class, and lists factors that a court needs to consider in determining whether common issues predominate.[75]  Plaintiffs have briefed the applicability of all three sections of Rule 23(b), though Plaintiffs state that relief under Rule 23(b)(3) is sought only in the alternative.[76]  Because the Court holds that Plaintiffs' claims in the case at bar meet the requirements of Rule 23(b)(1), the Court does not reach the merits of possible treatment under paragraphs 23(b)(2) or (b)(3).

Rule 23(b)(1) states that a class action may be maintained if prosecuting separate actions by or against individual class members would create a risk of

---

[72] *Reeb v. Ohio Dept. of Rehab. & Corr.*, 435 F.3d 639, 645 (6th Cir. 2006).

[73] *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002).

[74] *Reeb*, 435 F.3d at 645.

[75] *Id.* at 645-46 (citations omitted).

[76] The Court adds that the Sixth Circuit has held that when class certification would be appropriate under either Rule 23(b)(1) or (b)(3), the district court should certify a mandatory (b)(1) class, and not the opt-in (b)(3) class. *First Fed. of Mich. v. Barrow*, 878 F.2d 912, 919 (6th Cir. 1989) (citation omitted).

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.[77]

The Sixth Circuit has commented that Rule 23(b)(1) serves to avoid "anomalous results" in separate actions presenting common issues or facts.[78]  For example, without class treatment there is a risk that "differing interpretations of the law" will result in inconsistent judgments under the same facts.[79]  Rule 23(b)(1)'s purpose is, therefore, to protect the rights of absent parties.[80]  Due to the mandatory nature of Rule 23(b)(1) class certification, the Supreme Court has "cautioned strongly against overuse of (b)(1) classes."[81]

## A.      *Rule 23(b)(1)(B)*

The Court holds that Plaintiffs' ERISA claims are suitable for class treatment under subparagraph (B) of Rule 23(b)(1).  As the Court has emphasized throughout this Order, Plaintiffs have brought suit on behalf of the Plan itself seeking plan-wide relief.  Many courts have concluded that because ERISA § 502(a)(2) breach of fiduciary duty claims are derivative in

---

[77] Fed. R. Civ. P. 23(b)(1)(A) & (B).

[78] *Barrow*, 878 F.2d at 919 (quoting *Guy v. Abdulla,* 57 F.R.D. 14, 17 (N.D. Ohio 1972)).

[79] *Id*.

[80] *Id*.

[81] *Spano*, 633 F.3d at 587 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841–48, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999)).  *See also In re Teletronics Pacing Sys., Inc.*, 221 F.3d 870 (6th Cir. 2000).

nature, such claims "are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class . . . ."[82]  According to Rule 23(b)(1)(B)'s Advisory Committee Notes, "certification is especially appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries."[83]  Defendants' arguments to the contrary, most courts continue to certify § 502(a)(2) class actions under Rule 23(b)(1)(B), even after the Supreme Court's holding in *Larue* that a participant in a defined contribution plan can bring an individual suit for breach of fiduciary duty.[84]  Indeed the *Larue* holding and the text of ERISA § 502(a)(2) permit any (and all) of the thousands of potential class members to bring separate actions against Defendants asserting the same claims on the Plan's behalf.  The Court finds that absent class certification, there is a strong possibility that more than one court will have to adjudicate issues common to all

---

[82] *Schering Plough*, 589 F.3d at 604-605.  *See YRC Worldwide*, 2011 WL 1303367, at *9; *Harris v. Koenig*, 271 F.R.D. 383, 393 (D.D.C. 2010); *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 593 (S.D. Cal. 2010); *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95 (D. Mass. 2010); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 144 (S.D.N.Y. 2010); *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 173–74 (E.D. Pa. 2009)*; Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 193 (W.D. Mo. 2009); *Merck*, 2009 WL 331426, at *10; *Kanawi*, 254 F.R.D. at 111–12; *George*, 251 F.R.D. at 352; *Williams Cos.*, 231 F.R.D. at 424-25; *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 346-47 (C.D. Cal. 2005); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004); *Kolar v. Rite Aid Corp.*, No. 01-CV-1229, 2003 WL 1257272, at *3 (E.D. Pa. Mar. 11, 2003); *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 467 (E.D. Pa. 2000). Defendants' cite in opposition to Rule 23(b)(1)(b) certification two cases: *First Am.*, 258 F.R.D. at 622; and *Fremont Gen. Corp. Litig.*, 2010 WL 3168088, at *1833 (C.D. Cal. Apr. 15, 2010). The Court finds the holding in these two cases to be contrary to the great weight of authority on this issue.

[83] *Harris*, 271 F.R.D. at 394 (discussing Adv. Comm. Notes to the 1966 Amendment of Rule 23(b)(1)).

[84] *Id*. (citing *George v. Kraft Food Global, Inc.*, No. 08-C-3799, 270 F.R.D. 355, 2010 WL 3386402 (N.D. Ill. Aug. 25, 2010); *Marsh*, 265 F.R.D. at 144; *Stanford,* 263 F.R.D. at 173–74; *Hochstadt,* 708 F. Supp. 2d at 105 n. 12; *Kanawi*, 254 F.R.D. at 109; *NovaStar Fin., Inc.*, 257 F.R.D. at 190; *Hans v. Tharaldson,* No. 3:05-cv-115, 2010 WL 1856267, at *9-10 (D.N.D. May 7, 2010)).

class members.  Each of these potential proceedings would likely present the same common issues of law and fact previously identified in this Order, primarily whether Defendants breached their fiduciary duties to the Plan.  Class certification will, therefore, protect Plaintiffs and the class members from the risk of inconsistent rulings that might well be dispositive of their claims.[85]  Therefore, certification under Rule 23(b)(1)(B) is **GRANTED**.

### B.      *Rule 23(b)(1)(A)*

For many of the same reasons, the Court finds that certification under Rule 23(b)(1)(A) is also appropriate.  Class treatment of Plaintiffs' claims for plan-wide relief in the case at bar will insulate Defendants from the risk of incompatible court orders and judgments.  Any number of Plan participants have standing to file separate lawsuits against Defendants alleging breaches of fiduciary duties owed to the Plan.  Not only would this procedure multiply the proceedings against Defendants, inconsistent court rulings could potentially impose on Defendants "incompatible standards of conduct."  Other courts have recognized the potential inconsistencies separate § 502(a)(2) suits could precipitate.[86]  Based on the possibility that Defendants will be

---

[85] *See* Fed. R. Civ. P. 23(b)(1)(B), Adv. Committee Notes ("This clause takes in situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter."). The only Sixth Circuit authority Defendants have cited in opposition to certification under (b)(1)(B) is *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984).  The Court finds *Bendictin* distinguishable because class certification under (b)(1)(B) in that case was premised on a  "limited fund theory," which is not at issue in this case.

[86] *See e.g. Harris*, 271 F.R.D. at 394 ("this Court could enter a ruling to restore Plan assets, remove Plan fiduciaries, or reform Plan investigative practices and monitoring practices that would directly contradict another Court's ruling on the very same issues"); *Hans,* 2010 WL 1856267, at *10 ("two different courts taking testimony on the fair market value of the shares in 1998 or 1999 could reach different valuations, or one court could find the sale took place at fair market value and another could conclude that it was below (or above) fair market value"); *Stanford*, 263 F.R.D. at 173 ("if a court entertaining an individual account claim were to reach a

faced with inconsistent court orders directing "incompatible standards of conduct," the Court holds that class certification is appropriate under Rule 23(b)(1)(A).  Therefore, Plaintiffs' Motion is **GRANTED**.

Having concluded that Plaintiffs have met their burden to satisfy Rule 23(b)(1) under either subparagraph (B) or (A), the Court declines to reach the arguments presented on certification under Rule 23(b)(2) or (3).

## IV.   Class Certification

The Court holds that Plaintiffs have met their burden to show that class certification is appropriate under Rule 23(a) and (b).  The Court has already noted its concerns about the class definition Plaintiffs have proposed.  More specifically, the Court has called attention to the disjunctive nature of the class Plaintiffs have defined, members who held First Horizon stock "and/or" the First Funds.  The Court has also expressed some concerns about the representation of class members who signed releases.  Rule 23(c)(5) states, "When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."[87]  The Sixth Circuit has recently affirmed the district courts' "broad discretion in determining whether to bifurcate

---

different conclusion from a court entertaining a plan-wide claim, the fiduciaries would be left with incompatible orders concerning the same account"); *Jones*, 257 F.R.D. at 193-94 ("If one court ordered full restitution to the Plan and removal of the fiduciaries, but another ordered differently, those orders would establish incompatible standards of conduct for Defendants."); *Kanawi*, 254 F.R.D. at 111 ("[T]here are over 17,000 potential plaintiffs who could individually file suit for damages arising from the same conduct.  This would create a risk of 'inconsistent and varying' adjudications . . . ."); *Merck*, 2009 WL 331426, at *12 ("A Court adjudicating a suit by an individual plaintiff would determine the issues of the existence of the fiduciary duty and its breach not in relation to the individual plaintiff, but in relation to the entire plan.").

[87] Fed. R. Civ. P. 23(c)(5).

proceedings or divide a class action into subclasses."[88]  This authority is consistent with the Court's continuing discretion to modify a certification order "in the light of subsequent developments in the litigation."[89]

Under the circumstances, the Court believes that the conditional certification of two classes will ultimately be preferable to the single class defined in the disjunctive Plaintiffs have proposed.  Plaintiffs have already identified at least two classes: those who invested in First Horizon stock and those who invested in the First Funds.  The Court finds that the creation of a subclass of members who signed releases will satisfy any questions about class conflicts over that issue.  In short, although the Court holds that Plaintiffs have satisfied Rule 23 (subject to these qualifications), the Court conditions its class certification on a further showing of how the class at large can be divided into appropriate subclasses going forward.  Therefore, the parties are ordered to confer about how to more precisely define the different subclasses and file a joint proposal with the Court within thirty (30) days.

Pursuant to Federal Rule of Civil Procedure 23(c)(1)(B) and subject to these qualifications, Plaintiffs' Motion for Class Certification is **GRANTED IN PART, DENIED IN PART**.  The Court conditionally certifies the following two classes in this action:

• The First Horizon Stock Class:  Participants in and beneficiaries of the First Horizon National Corporation Savings Plan ("Plan"), excluding Defendants, whose accounts in the Plan were invested in First Horizon common stock between January 1, 2006 and July

---

[88] *Randleman v. Fidelity Nat'l Title Ins. Co.*, — F.3d —, 2011 WL 1833198, at *7 (6th Cir. May 16, 2011) (citations omitted).

[89] *Falcon,* 457 U.S. at 160, 102 S. Ct. 2364.  *See also* Fed. R. Civ. P. 23(c)(1)(C).

14, 2008.

• The First Funds Class: Participants in and beneficiaries of the First Horizon  National

Corporation Savings Plan ("Plan"), excluding Defendants, whose accounts in the Plan

were invested in First Horizon's proprietary mutual or money market funds—the First

Funds— between May 9, 2002 and June 5, 2006.

Additionally, Plaintiffs' Motion for Class Certification of the following class claims is

**GRANTED:**

• Count I: failure to prudently and loyally manage the Plan's investment in FHN Stock in

violation of ERISA § 404;

• Count II: breaches of duties of loyalty and prudence by causing the Plan to invest in

First Funds in violation of ERISA § 404;

• Count IV: failure to monitor Plan fiduciaries in violation of ERISA § 404; and

• Count V: breach of co-fiduciary duties in violation of ERISA § 405.

Finally, pursuant to Rule 23(g), Plaintiffs' Motion to certify Ellen M. Doyle and Stember

Feinstein Doyle Payne & Cordes, LLC as Class Counsel is **GRANTED**.

## <u>CONCLUSION</u>

The Court holds that Plaintiffs have satisfied the requirements of Rule 23(a) and (b) and

so class certification is warranted under the circumstances.  Based on its conclusion that Plaintiff

Yost lacks standing to represent a class of First Funds investors, the Court conditionally certifies

the two separate classes defined in this Order as opposed to the single class sought by Plaintiffs.

The Court has conditioned its certification on the formulation of more precise subclasses,

including a subclass of members who signed releases.  Therefore, Plaintiffs' Motion for Class

Certification is conditionally **GRANTED IN PART, DENIED IN PART**.

       **IT IS SO ORDERED.**

                           **s/ S. Thomas Anderson**

                           S. THOMAS ANDERSON

                           UNITED STATES DISTRICT JUDGE

                           Date: June 3, 2011.