# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

|  |  |
|---|---|
| JOHN YOST, GERALD L. SANDERS, JOSEPH WETEGROVE, and ANTHONY SMITH, individually, and on behalf of all others similarly situated, | Civil Action No. 2:08-02293-STA-cgc |
| | District Judge S. Thomas Anderson |
| Plaintiffs, | Magistrate Judge Charmiane G. Claxton |
| v. | |
| FIRST HORIZON NATIONAL CORPORATION, *et al.*, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

Ellen M. Doyle (PA Bar 21854)
edoyle@stemberfeinstein.com
Pamina Ewing
pewing@stemberfeinstein.com
Joel R. Hurt
jhurt@stemberfeinstein.com
Maureen Davidson-Welling
mdavidsonwelling@stemberfeinstein.com

**STEMBER FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA  15219
T: 412.281.8400
F: 412.281.1007

*Attorneys for Plaintiffs and the Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................ ii

I.     INTRODUCTION ................................................................................1

II.    HISTORY OF LITIGATION LEADING TO SETTLEMENT ............................2

III.   THE NOTICE SATISFIES RULE 23 AND DUE PROCESS ..............................9

IV.   THE SETTLEMENT IS FAIR AND REASONABLE .......................................10

       A.   Company Stock Cases Continue To Be Very Risky ...............................11

       B.   The First Funds Claims Also Faced Significant Risks.............................15

       C.   This Settlement Is A Fair And Reasonable Compromise ........................16

V.    THE AMENDED PLAN OF ALLOCATION SHOULD BE APPROVED ........19

VI.   CONCLUSION .................................................................................20

# TABLE OF AUTHORITIES

## Cases

Brieger v. Tellabs, Inc., 2009 WL 1565203 (N.D. Ill. June 1, 2009) ........................... 11

Clark Equipment Co. v. Int'l Union, Allied Industrial Workers, 803 F.2d 878 (6th Cir. 1986) .. 16

Collins v. Olin Corp., 2010 WL 1677764 (D. Conn. April 21, 2010) ......................... 13

Conkright v. Frommert, 130 S.Ct. 1640 (2010)................................................ 17

DiFelice v. U.S. Airways, Inc., 436 F.Supp.2d 756 (E.D. Va. June 26, 2006)...................... 11, 17

DiFelice v. U.S. Airways, Inc., 497 F.3d 410 (4th Cir. 2007)...................................... 11

Edgar v. Avaya, Inc., 503 F.3d 340 (3d Cir. 2007) ...................................... 12

Figas v. Wells Fargo & Co., No. 08-4546 (D. Minn. 2010) ........................................ 15

Franklin v. First Union Corp., Civil Action No. 99-CV-344 (E.D.Va. 2001) ............................. 15

Fuller v. SunTrust Banks, Inc., Civil Action No. 1:11-CV-784-ODE, 2012 WL 1432306
   (N.D. Ga. March 20, 2012) ........................................................ 16

Gipson v. Wells Fargo & Co., No. 08-4546, 2009 WL 702004 (D. Minn. Mar. 13, 2009) ......... 15

Granada Investments, Inc. v. DWG Corp., 962 F.2d 1203 (6th Cir. 1992) ........................... 10, 11

Hecker v. Deere & Co., 556 F.3d 575 (7th Cir. 2009)................................................ 15

In re AOL Time Warner, Inc. Sec. & ERISA Litig., 2006 U.S. Dist. LEXIS 17588
   (S.D.N.Y. 2006) ................................................................... 20

In re Citigroup ERISA Litig., 662 F.3d 128 (2d Cir. 2011) ................................... 12, 13

In re Computer Sciences Corp. Erisa Litig., 2010 WL 3784702 (9th Cir. 2010) ........................ 12

In re Computer Sciences Corp. Erisa Litig., 635 F.Supp.2d 1128 (C.D. Cal. 2009).................... 12

In re Oracle Sec. Litig., 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 16, 1994) ..................... 20

In re Price line.com, Inc., 2007 WL 2115592 (D. Conn. July 19, 2007)..................................... 19

Int'l Union, United Auto., Aerospace, and Agricultural Implement Workers of Am. v. General
   Motors Corp., 497 F.3d 615 (6th Cir. 2007)................................................. 10, 11, 16

Landgraff v. Columbia/HCA Healthcare Corp., 2000 WL 33726564
(M.D. Tenn. May 24, 2000) ..................................................................................... 11

Lanfear v. Home Depot, Inc., 679 F.3d 1267 (11th Cir. 2012) .................................... 12

Leber v. CitiGroup, Inc., No. 07-9329, 2011 WL 5428784 (S.D.N.Y. Nov. 8, 2011) ................. 15

Lingis v. Motorola, Inc., 649 F.Supp.2d 861 (N.D. Ill. 2009) ...................................... 11

Loomis v. Exelon Corp., No. 07-CV-4900, 2009 WL 4667092 (N.D. Ill. Dec. 9, 2009) ........... 15

Mehling v. N.Y. Life Ins. Co., 2007 WL 3145344 (E.D. Pa. 2007) ............................ 15

Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306 (1950) ........................... 10

Nelson v. IPALCO Enterprises, Inc., 480 F.Supp.2d 1061 (S.D. Ind. 2007) ............... 11

Pfeil v. State Street Bank and Trust Co., 671 F.3d 585 (6th Cir. 2012) ..................... 12

Plasterers' Local Union No. 96 Pension Plan v. Pepper, 663 F.3d 210 (4th Cir. 2011).............. 13

Retsky Family Ltd P'ship v. Price Waterhouse LLP, 2001 WL 1568856
(N.D. Ill. Dec. 6, 2001) .......................................................................................... 19

Roth v. Sawyer–Cleator Lumber Co., 16 F.3d 915 (8th Cir.1994)................................ 13

Rotuna v. West Customer Management Group, LLC, 2010 WL 2490989
(N.D. Ohio June 15, 2010)..................................................................................... 17

Shirk v. Fifth Third Bancorp, 2009 WL 692124 (S.D. Ohio Jan. 29, 2009) ................ 11

Sims v. First Horizon Nat. Corp., 2009 WL 1789090 (W.D. Tenn. June 23, 2009) ..................... 3

Sims v. First Horizon Nat. Corp., 2009 WL 3241689 (W.D. Tenn. Sept. 30, 2009) ........... 2, 3, 4

Sims v. First Horizon Nat. Corp., 2010 WL 1050976 (W.D. Tenn. March 22, 2010) .................. 4

Tatum v. R.J. Reynolds Tobacco Co., 2011 WL 2160893 (M.D.N.C. June 1, 2011) ................. 11

Taylor v. KeyCorp, 680 F.3d 609 (6th Cir. 2012) ....................................................... 13

Taylor v. United Technologies Corp., No. 2:06-CV-1494, 2009 WL 535779
(D. Conn. Mar. 3, 2009)......................................................................................... 15

Tibble v. Edison Int'l, 2010 WL 2757153 (C.D. Cal. July 8, 2010) ........................... 15

Tibble v. Edison Int'l, 2010 WL 3239443 (C.D. Cal. Aug. 9, 2010) .......................... 15

iii

<u>Todd v. Retail Concepts, Inc.</u>, 2008 WL 3981593 (M.D. Tenn. Aug. 22, 2008) ......................... 10

<u>Tussey v. ABB, Inc.</u>, No. 2:06-CV-04305-NKL, 2012 WL 1113291
  (W.D. Mo. March 31, 2012) .......................................................................................... 15

<u>White v. NFL</u>, 822 F. Supp. 1389 (D. Minn. 1993)........................................................................ 19

<u>Yost v. First Horizon Nat. Corp.</u>, 2010 WL 4116986 (W.D. Tenn. Oct. 19, 2010) ...................... 4

<u>Yost v. First Horizon Nat. Corp.</u>, 2011 WL 2182262 (W.D. Tenn. June 3, 2011).................... 2, 4

**Statutes**

Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 ...................................... 2

Employee Retirement Income Security Act of 1974, § 404(c), 29 U.S.C. § 1104(c) ................... 3

**Rules**

Fed.R.Civ.P. 23(e) ...................................................................................................................... 10

Fed.R.Civ.P. 23(e)(1).................................................................................................................. 10

Fed.R.Civ.P. 56(f)......................................................................................................................... 3

# I.    INTRODUCTION

Named Plaintiffs, John Yost, Gerald L. Sanders, Joseph Wetegrove, and Anthony Smith, on behalf of themselves and the sub-classes they represent, respectfully submit this brief in support of their Motion for Final Approval of Class Action Settlement.  The terms of the parties' settlement are set forth in a settlement agreement executed on April 3, 2012 ("Settlement Agreement") (Dkt. #189-1).  This Court preliminarily approved the Settlement and notice program by Order dated May 16, 2012 (the "Preliminary Approval Order") (Docket No. 191).  The Settlement is fair, reasonable and adequate, and should be approved. If approved, it will finally resolve this litigation.

The parties have reached a proposed settlement of this case for $6 million, which will provide substantial benefits to class members and resolve all of Plaintiffs' claims.  In reaching the Settlement, Class Counsel considered the risks and uncertainties if this litigation were to continue.   Although Class Counsel believe that the claims have substantial merit, this action involves complex legal and factual issues, as well as serious and ongoing risks as to proof of the merits, proof of causation of losses by the fiduciaries' conduct, and both the measure of and amount of losses attributable to the fiduciary breaches.  With due consideration of the multiple risks confronting the Plaintiffs, Class Counsel negotiated the $6 million settlement, concluding that the Settlement is a fair and reasonable recovery to the Plan and result for the Class.

In accordance with the Preliminary Approval Order, and as set forth by the settlement administrator, notice of the Settlement was provided to all of the sub-Class members at their last known addresses as described in Defendants' records or as updated by A.B. Data.  As of the date of the filing of this submission, only one member of the Class has objected to the Settlement. Based on Class Counsel's consideration of the facts and circumstances, the state of the governing law, and in recognition of the substantial risks of continued litigation of claims of this nature,

Plaintiffs and Class Counsel request that this Court finally approve the proposed settlement as fair, reasonable and adequate, and in the best interests of the class.

## II.   HISTORY OF LITIGATION LEADING TO SETTLEMENT

Before commencing this case, Class Counsel extensively researched and investigated the pertinent law and underlying facts.  The initial 144-paragraph complaint was filed on May 9, 2008, alleging claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA"), and seeking to recover losses to the First Horizon National Corporation Savings Plan ("Plan").  Dkt. #1.  Members of all four of the certified sub-classes are Plan participants or beneficiaries.

Plaintiffs alleged that Defendants unlawfully selected the proprietary First Funds as Plan investment options without employing a prudent selection process untainted by conflict and that the Plan's fiduciaries maintained investment offerings in the First Funds even though most of those funds under-performed their peers.  See Dkt. #93, Sims v. First Horizon Nat. Corp., 2009 WL 3241689, *1 (W.D. Tenn. Sept. 30, 2009); Dkt. #147, Yost v. First Horizon Nat. Corp., 2011 WL 2182262, *2 (W.D. Tenn. June 3, 2011).  Plaintiffs also alleged that Defendants unlawfully invested Plan assets in First Horizon common stock when Plan fiduciaries knew or should have known that material information about the Company's financial problems had not been disclosed.  2009 WL 3241689, *1.  First Horizon stock fund was an imprudent retirement investment because (1) First Horizon had assumed massive new risks of default and loss through its banking practices in an effort to fuel national growth; (2) the Company lacked the credit review, audit, or accounting infrastructure to adequately identify and manage those risks, and (3) it did not properly reserve for the losses on its risky products, so that the Plan was purchasing shares of First Horizon stock at an inflated price.  2011 WL 2182262, *1.

Defendants have vigorously disputed Plaintiffs' allegations and raised several defenses, including the defenses that Plaintiffs' claims are untimely, and are barred by application of ERISA § 404(c), 29 U.S.C. § 1104(c), and by the execution of releases by certain members of the class.  Answer to Third Amended Complaint (Dkt. #137), Defendants' Specific Defenses.

On September 17, 2008, Plaintiffs filed a 201-paragraph Amended Complaint (Dkt. #29), naming a new plaintiff, John Yost, as well as new Defendants and alleging five claims.  On October 21, 2008, Defendants filed a Motion to Dismiss with 31 supporting exhibits (Dkt. #41) and a Motion for Summary Judgment (Dkt. #43) with more than 20 exhibits.  Plaintiffs filed a motion under Fed.R.Civ.P. 56(f), seeking discovery prior to any ruling on Defendants' summary judgment motion.  Dkt. ## 55-2, 56.  Plaintiffs' extremely detailed Fed.R.Civ.P. 56(f) Affidavit was 96 paragraphs in length.  Dkt. #57-1.  Defendants opposed Plaintiffs' motion, and Plaintiffs filed a reply brief in further support of their motion.  Dkt. ##67, 70.  After Magistrate Judge Cohn granted Plaintiffs leave to take discovery, Defendants filed objections.  Dkt. #77.  On April 30, 2009, the Court denied without prejudice Defendants' Motion for Summary Judgment, citing Plaintiffs' need for discovery.  Dkt. #80; Sims v. First Horizon Nat. Corp., 2009 WL 1789090 (W.D. Tenn. June 23, 2009).

Plaintiffs opposed Defendants' motion to dismiss (Dkt. #85), Defendants filed a reply (Dkt. #86) and Plaintiffs filed a surreply (Dkt. #92).  On September 30, 2009, the Court granted in part and denied in part Defendants' Motion to Dismiss.  Dkt. #93; Sims, 2009 WL 3241689. The Court concluded that Plaintiffs properly stated a claim in Count I that Defendants breached their fiduciary duty by continuing to invest Plan assets in First Horizon stock when it was no longer prudent to do so but failed to state a claim to the extent that Plaintiffs were alleging that Defendants breached their fiduciary duties by not amending the Plan to alter certain provisions. The Court dismissed Count III and concluded that Plaintiffs stated their derivative claims for

failure to monitor (Count IV) and for breaches of co-fiduciaries (Count V) with respect to Count I. To the extent that Plaintiffs failed to state the predicate claims in Counts I and III, the Court dismissed these aspects of Counts IV and V.  2009 WL 3241689, *30.

Defendants filed a motion for a certificate of appealability as to the Court's dismissal ruling (Dkt. #95); Plaintiffs opposed this (Dkt. #96).  The Court granted a certificate of appealability on March 22, 2010.  Dkt. #103; Sims v. First Horizon Nat. Corp., 2010 WL 1050976 (W.D. Tenn. March 22, 2010).  Defendants filed a motion for interlocutory appeal in the Sixth Circuit, which Plaintiffs opposed and the Sixth Circuit denied on June 2, 2010.

On September 3, 2010, Defendants filed a motion to reconsider the Court's earlier dismissal ruling (Dkt. #105), which Plaintiffs opposed (Dkt. #108).   The Court denied Defendants' motion on October 19, 2010.  Dkt. #117; Yost v. First Horizon Nat. Corp., 2010 WL 4116986 (W.D. Tenn. Oct. 19, 2010).

On October 1, 2010, Plaintiffs filed a motion seeking leave to file a 330-paragraph Second Amended Complaint adding two new Plaintiffs, Kathleen Brennan and Gerald Sanders, and additional factual allegations (Dkt. #109); the Court granted this motion (Dkt. ##111, 114). On February 25, 2011, Plaintiffs filed a 330-paragraph Third Amended Complaint, omitting Kathleen Brennan and leaving John Yost and Gerald Sanders as named plaintiffs.  Dkt. #134.

Plaintiffs first moved for class certification on January 29, 2010, supporting their motion with 26 exhibits.  Dkt. #98.  Plaintiffs filed an amended motion for class certification on December 10, 2010 (Dkt. #123).  Defendants opposed this motion (Dkt. #138), and Plaintiff filed a reply (Dkt. #143).  On June 3, 2011, the Court entered an Order Conditionally Granting in Part, Denying in Part Plaintiffs' Amended Motion for Class Certification (Dkt. #147); Yost v. First Horizon Nat. Corp., 2011 WL 2182262 (W.D. Tenn. June 3, 2011).  The Court conditionally certified two Plaintiff classes: (i) participants who invested in FHN Stock from January 1, 2006

to July 14, 2008; and (ii) participants who invested in the First Funds from May 9, 2002 to June 5, 2006.  The Court conditioned its certification on formulation of a subclass of class members who signed releases when leaving their employment with First Horizon.  The parties' July 5, 2011 Joint Report to the Court on the Certification of More Precise Subclasses ("Joint Report on Subclasses") (Dkt. #161) formulated two such subclasses.

On June 23, 2011, Plaintiffs filed a motion to resolve a disputed claim of privilege concerning third party documents produced by FHN's accounting consultant, Ernst & Young LLC.  Dkt. #150.  These documents concerned the Office of the Comptroller of the Currency ("OCC"), which claimed application of the bank examination privilege.  The OCC and Defendants opposed this motion (Dkt. ##160, 163), and Plaintiffs filed a reply brief in support of their motion (Dkt. #167).  The Court granted in part and denied in part this motion.  Dkt. # 171.  Plaintiffs thereafter filed a renewed motion to resolve their claim of privilege.  Dkt. #178.

With Defendants' leave, Plaintiffs on September 30, 2011 filed a 331-paragraph Fourth Amended Complaint (Dkt. #175) which set forth four subclasses ("Subclasses") in conformity with the Court's Conditional Certification Order.  Plaintiffs also added two new named plaintiffs, Joseph Wetegrove and Anthony Smith, to serve as class representatives for the release subclasses.  On October 14, 2011, Plaintiffs filed an unopposed motion for entry of an order certifying four Subclasses.  Dkt. #184.

Plaintiffs engaged in significant discovery in this case, including  seeking, obtaining, reviewing and analyzing over 24,434 documents and 132,401 pages from Defendants, as well as over 44,000 additional pages from the following third parties:  KPMG, LLP, Ernst & Young, PricewaterhouseCoopers, and Mercer.  Because FHN's management structure was organized into subject area committees, and given the broad focus of Plaintiffs' claims of Company-wide problems in risk management, Plaintiffs in discovery focused heavily on the work performed by

5

FHN's internal management committees to demonstrate those Company-wide risk management problems and the information known to them that should have been known by the Plan fiduciaries.  In addition, Plaintiffs also focused on Committees providing information relevant to the accounting problems, particularly as to the methodology used to set its allowance of loan and lease losses ("ALLL").[1]

In connection with their motion to resolve a disputed claim of privilege concerning third party documents, referenced above, Plaintiffs also sought to obtain waiver of the bank examination privilege from the OCC in order to use OCC related documents and communications to prove, particularly during the early portion of the Company Stock class period, that First Horizon failed to comply with existing regulatory guidance, particularly in the areas of credit risk management, including the lack of independence in credit review; the methodology for setting its ALLL; and the requirements for an adequate control structure.

Plaintiffs also retained four consulting experts in the areas of bank accounting, credit and banking practices and investment management, conducted internet investigation into FHN's policies and practices, and reviewed numerous SEC filings, including 10-Ks, 11-Ks, 8-Ks, 10-Qs, proxy statements and other publicly available information.  Plaintiffs compared the public filings with the internal reporting to management committees below the Board level.

---

[1] Plaintiffs reviewed minutes and reports concerning the following FHN committees: Administrative Committee; Asset Liability Committee; Audit Committee; Base Rate Committee; Board of Directors; C&I Policy Committee; Capital Management Committee; Consumer Governance Committee; Corporate Compliance Risk Committee; Credit Policy & Executive Committee; Credit Risk Management/Senior Credit Policy Committee; Disclosure Compliance Committee; Earnings-at-Risk Committee; Enterprise Portfolio Committee; Enterprise-Wide Risk/Return Management Committee; Financial Counterparty Credit Committee; HLTV Committee; Liquidity Committee; MSR Committee; Operational Risk Committee; Pricing Committee; Real Estate Policy Committee; Regulatory Compliance Committee; Reputational Risk Committee; Retirement Investment Committee; and Securitization Committee Watch List Committee.

Following months of negotiations, the parties agreed to mediate this matter before retired United States District Judge James Robertson, who until June 2010 had served on the court for the District of Columbia for more than fifteen years.  At the mediation held November 8, 2011, and with the assistance of Judge Robertson, the parties agreed to a settlement in principle and signed a term sheet at that time.  The parties proceeded to execute the Settlement Agreement on April 3, 2012.  Plaintiffs moved for preliminary approval on May 2, 2012.

In its Preliminary Approval Order entered May 16, 2012 (Dkt. #191), the Court adopted the following modified class definition proposed by Plaintiffs and not opposed by Defendants:

> The First Horizon Stock Subclass (Subclass 1): Participants in and beneficiaries of the Plan, excluding Defendants, who did not sign a release and whose accounts in the Plan were invested to any extent in First Horizon common stock between January 1, 2006 and July 14, 2008;
>
> The First Funds Subclass (Subclass 2): Participants in and beneficiaries of the Plan, excluding Defendants, who did not sign a release and whose accounts in the Plan were invested to any extent in First Horizon's proprietary mutual or money market funds-the First Funds-between May 9, 2002 and June 5, 2006;
>
> The First Horizon Stock/Release Subclass (Subclass 3): Participants in the Plan, excluding Defendants, whose accounts in the Plan were invested to any extent in First Horizon common stock between January 1, 2006 and July 14, 2008 and who signed releases, and persons who are Plan beneficiaries as a result of their relationship with a participant who signed a release; and
>
> The First Funds/Release Subclass (Subclass 4): Participants in the Plan, excluding Defendants, whose accounts in the Plan were invested to any extent in First Horizon's proprietary mutual or money market funds-the First Funds-between May 9, 2002 and June 5, 2006 and who signed releases, and persons who are Plan beneficiaries as a result of their relationship with a participant who signed a release.

Id. at 2-3.  The Court appointed John Yost and Gerald Sanders as representatives of Subclass 1, Gerald Sanders as representative of Subclass 2, Joseph Wetegrove as representative of Subclass 3, and Anthony Smith as representative of Subclass 4.  Id. at 3.

The Court also made the following preliminary findings (at id.):

(i) the proposed Settlement resulted from extensive arm's-length negotiations;

7

(ii) the Settlement Agreement was executed only after Class Counsel had conducted appropriate investigation and discovery regarding the strengths and weaknesses of Plaintiffs' claims;

(iii) Class Counsel has concluded that the proposed Settlement is fair, reasonable, and adequate; and

(iv) the proposed Settlement-including the Plan of Allocation of the Distribution Amount set forth therein-is sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed Settlement to the Class.

Accordingly, this Court concluded (at id.):

Having considered the essential terms of the Settlement under the recommended standards for preliminary approval of settlements as set forth in relevant jurisprudence, the Court finds that those whose claims would be settled, compromised, dismissed, and/or released pursuant to the Settlement should be given notice and an opportunity to be heard regarding final approval of the Settlement and other matters.

The Court scheduled a fairness hearing for September 13, 2012 for the purpose of determining, among other things, whether the Action should be dismissed with prejudice pursuant to the terms of the Settlement; whether Class Counsel adequately represented the Class for purposes of entering into and implementing the Settlement; whether the proposed Plan of Allocation[2] should be approved; and whether any application(s) for attorneys' fees, for reimbursement of costs and expenses, and/or for Case Contribution Awards to the Named Plaintiffs are fair and reasonable and should be approved.  Id. at 3-4.  The Court also approved the proposed form of Notice and directed that notice be communicated to members of the Class in the manner proposed by Plaintiffs, and provided for the filing of objections to the Settlement, the Plan of Allocation, and the proposed award of attorneys' fees.  Id. at 4-5.  To date, only one

---

[2] Class Counsel filed an Amended Plan of Allocation on August 7, 2012 (Dkt. #193-1), which revised the formula for allocating the recovery on the First Funds claims to more closely track the losses in class members' accounts from investing in the First Funds during the class period. In all other respects, the Amended Plan of Allocation is identical to the original Plan of Allocation.

objector, Suzanne M. Russell, has opposed the proposed settlement (Dkt. #192).[3]  The deadline

for objections is August 30, 2012; Plaintiffs will file a separate response in the event that any

additional objections are submitted.

### III.    THE NOTICE SATISFIES RULE 23 AND DUE PROCESS

The Court directed that Notice of the Settlement as proposed by Plaintiffs be sent to all

potential Class members.  As summarized by the Court (at Dkt. #191 at 4), the Notice:

> (i) describes generally the terms and benefits to be provided the Class and the
> binding effect of the Settlement and this Settlement Agreement, including releases
> given to Defendants; (ii) explains the Plan of Allocation; (iii) gives notice of the
> time and place of the Fairness Hearing; (iv) describes how an objection may be
> made to entry of the Final Approval Order and the deadline for the filing of such
> objection; (v) describes how Class Counsel will apply to the District Court for an
> award of attorneys' fees and for reimbursement of costs and expenses and the
> deadline for the filing of such application; and (v) describes how the Named
> Plaintiffs will apply to the District Court for Case Contribution Awards and the
> deadline for the filing of such application.

Pursuant to the Preliminary Approval Order, the Settlement Administrator sent the

Notice, within 15 days of the Order, by first class mail to Class members' last known addresses.

See Affidavit of Daniel Rieck ("Rieck Aff.") (Ex. 4 to Doyle Declaration) ¶ 9.  The Settlement

Administrator also updated the addresses for those class members for whom the Notice was

returned as undeliverable, and re-mailed to Notice to them.  Id. ¶¶ 10-12.  In addition, the

Settlement Administrator established a settlement website and a case specific toll-free telephone

number with an interactive voice response system which class members could call to obtain

additional information regarding the Settlement.  Id. ¶¶13-15.

To satisfy due process considerations, notice to Class members must be "reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of the action

---

[3] In her two paragraph objection, Ms. Russell registered her opposition to the fees and expenses
to be received by Class Counsel and stated:  "I recommend that the Court either dismiss this case
or toss the entire $6,000,000 Settlement ($100 bills) into a pile and allow the 'civil litigators' to
savage themselves as they fight over the money."  Id.

and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Here, the form and method of Class Notice satisfied all due process considerations and meets the requirements of Fed. R. Civ. P. 23(e)(1). The Class Notice in plain English (i) described generally the terms and benefits to be provided the Class and the binding effect of the Settlement, including releases given to Defendants; (ii) explained generally the Plan of Allocation; (iii) gave notice of the time and place of the fairness hearing; (iv) described how an objection could be made to entry of the final approval order and the deadline for the filing of such objection; (v) described how Class Counsel would apply to the Court for an award of attorneys' fees and expenses and the deadline for the filing of such application; and (v) described how the Named Plaintiffs will apply to the District Court for case contribution awards, and the deadline for the filing of such application.

## IV.    THE SETTLEMENT IS FAIR AND REASONABLE

The Court should approve a class action settlement if, following direct notice in a reasonable manner to all class members who would be bound, the Court determines that the settlement "is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e); Int'l Union, United Auto., Aerospace, and Agricultural Implement Workers of Am. v. General Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)("General Motors"). Several factors guide the Court's inquiry:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

Id. Courts also consider the risk, expense and delay of further litigation. Granada Investments, Inc. v. DWG Corp., 962 F.2d 1203, 1205 (6th Cir. 1992); Todd v. Retail Concepts, Inc., 2008 WL 3981593, at *4 (M.D. Tenn. Aug. 22, 2008). The Court enjoys wide discretion in assessing

the weight and applicability of these factors.  Granada Investments, Inc., 962 F.2d at 1205-1206.

Federal policy favors settlement of class actions.  General Motors, 497 F.3d at 632.

A.      **Company Stock Cases Continue To Be Very Risky.**

The risks of litigating this case through trial, when weighed against the immediate

benefits of settlement, reinforce Plaintiffs' judgment that the Settlement is in the best interest of

the Class.  These are not cookie-cutter claims and there has not yet been established any clear

route to success after trial in any of the cases involving claims of imprudent investment in

employer securities.  To the best of Plaintiffs' knowledge, five ERISA company stock fund cases

have been tried on the merits.  Four of these resulted in defense verdicts.  See DiFelice v. U.S.

Airways, Inc., 436 F.Supp.2d (E.D. Va. June 26, 2006), affirmed, 497 F.3d 410 (4th Cir. 2007);

Brieger v. Tellabs, Inc., 2009 WL 1565203 (N.D. Ill. June 1, 2009); Nelson v. IPALCO

Enterprises, Inc., 480 F.Supp.2d 1061 (S.D. Ind. 2007); Landgraff v. Columbia/HCA Healthcare

Corp., 2000 WL 33726564 (M.D. Tenn. May 24, 2000).  A fifth case, Tatum v. R.J. Reynolds

Tobacco Co., discussed at 2011 WL 2160893 (M.D.N.C. June 1, 2011), was also tried on the

merits; but two years after the trial no decision has been issued.  Thus, the risks of continuing to

trial are high, the risks on appeal are significant and delay is assured.  These considerations

weigh heavily in favor of the approval of a reasonable settlement.

Many employer securities cases have proceeded no further than motions to dismiss, and

getting past a motion to dismiss is no guarantee of success.  In Shirk v. Fifth Third Bancorp,

2009 WL 692124 (S.D. Ohio Jan. 29, 2009), the district court entered summary judgment for the

employer after denying the employer's motion to dismiss.  The court held that the plaintiffs'

evidence was insufficient as a matter of law to rebut the presumption of reasonableness.  Id. at

*14.  See also Lingis v. Motorola, Inc., 649 F.Supp.2d 861 (N.D. Ill. 2009) (defendants' motion

for summary judgment granted); and In re Computer Sciences Corp. Erisa Litig., 635 F.Supp.2d

1128 (C.D. Cal. 2009), aff'd, 2010 WL 3784702 (9th Cir. 2010) (summary judgment awarded to defendants on claims they breached duties by offering employer's stock as plan investment option during period when employer was allegedly backdating stock options for executives).

It also is noteworthy that while the Sixth Circuit recently issued a favorable decision in this area of the law, in a ruling authored by Judge Anderson after the parties had already agreed to settle this case, Pfeil v. State Street Bank and Trust Co., 671 F.3d 585 (6th Cir. 2012), the circuits are split on some of the points addressed in Pfeil.  Notably, the Second Circuit issued a decision unfavorable to Plaintiffs' claims in In re Citigroup ERISA Litigation, 662 F.3d 128 (2d Cir. 2011).  On June 22, 2012, the plaintiffs in Citigroup filed a petition for a writ of certiorari with the United States Supreme Court.  See 2012 WL 2394011.

As explained in the Citigroup petition, there is a conflict in the circuits over what must be alleged in a complaint regarding the obligations of ERISA fiduciaries investing in qualified employer stock. The court in Citigroup and in some other circuits have held (at least for pleading purposes) that fiduciaries may do nothing to protect participants from significantly overvalued or otherwise imprudently purchased employer stock, so long as the fiduciaries do not know facts that satisfy some extra-statutory standard such as "dire situation" or "brink of collapse."  662 F.3d at 140 (citing Edgar v. Avaya, Inc., 503 F.3d 340, 348 (3d Cir. 2007)).  By contrast, this Circuit in Pfeil, which concerned dismissal of a complaint on a motion to dismiss, observed: "[i]n contrast to our sister circuits, we have not adopted a specific rebuttal standard that requires proof that the company faced a 'dire situation,' something short of 'the brink of bankruptcy,' or an 'impending collapse.'" 671 F.3d at 595.  The Eleventh Circuit has observed that the Sixth Circuit "puts less deference behind the presumption than the Second or Third Circuits do." Lanfear v. Home Depot, Inc., 679 F.3d 1267, 1281 n.16 (11th Cir. 2012)(rejecting the Sixth Circuit's rule and aligning itself with the Second and Third Circuits.)

12

Furthermore, while the Sixth Circuit's recent ruling in Pfeil is favorable to Plaintiffs' claims, the Sixth Circuit also recently issued an unfavorable decision, in Taylor v. KeyCorp, 680 F.3d 609 (6th Cir. 2012).  The Court held that when an ERISA plaintiff alleges that the withholding of information affected share prices, the appropriate measure of losses is the difference between the investment as taken and the investment as it would have been if not tainted by withheld information; to allow a plaintiff the benefit of an alternative, more lucrative investment, would not advance ERISA policies.  Id. at 614.  Also, loss calculations in ERISA cases involving employer securities are expert-intensive and generally rely on assumptions that defendants regularly attack.  While Plaintiffs are confident in their ability to establish substantial losses, they understand that presentation of such complex testimony involves risks that settlement avoids.  See Collins v. Olin Corp., 2010 WL 1677764, at *6 (D. Conn. April 21, 2010) (in identifying risk of proving damages, noting that "the process of establishing damages would have rested on an unpredictable 'battle of the experts'").

In Plasterers' Local Union No. 96 Pension Plan v. Pepper, 663 F.3d 210 (4th Cir. 2011), after a full trial of a fiduciary breach action brought by subsequent fiduciaries against prior fiduciaries, the Fourth Circuit remanded the decision finding fiduciary breach.  The Fourth Circuit followed the Eighth Circuit in ruling that, if a fiduciary failed to conduct an investigation before making an investment decision, even though such conduct was imprudent, the fiduciary "'is insulated from liability [under Section 409(a)] if a hypothetical prudent fiduciary would have made the same decision anyway.'"  Id. at 218 (quoting Roth v. Sawyer–Cleator Lumber Co., 16 F.3d 915, 919 (8th Cir.1994)).  Thus, if an imprudent fiduciary makes the same investment that a hypothetical prudent fiduciary could have made, any loss is not the result of the fiduciary's imprudence, and the plan does not incur a recoverable loss.  Similarly, in In re Citigroup ERISA Litig., the Second Circuit ruled that plaintiffs must allege not only that fiduciaries failed to

investigate the continued prudence of the investment but also that the fiduciaries' failure to investigate caused a loss to the plan.  662 F.3d at 141.

There is also unfavorable authority in other circuits as to the burden on plaintiffs to prove that particular losses were caused by the fiduciary breach rather than by other possible causes. The problem for plaintiffs lies in their having to prove that a particular part of a loss to a plan is caused by a particular failing on the part of defendants.  The defense position is that the burden is on the plaintiff to prove as to each fiduciary breach both that the breach is material, and that that no other problem caused the breach.  Theoretically this could require plan participants to finance extremely expensive regression analyses in virtually every employer stock fiduciary breach case as part of their "war of the experts."

There is no question that this case involves facts, accounting principles, banking guidance and legal concepts that involve areas for expert testimony and are highly extremely complex. The Fourth Amended Complaint is 331 paragraphs in length, and the issues as to proof of the merits, proof of causation, establishment of the standard of care for fiduciaries responsible for investments in employer stock, as well as the measurement and amount of losses arising from the fiduciary breaches, are challenging.  Plaintiffs' claims require proof involving such highly technical issues as the propriety of First Horizon's accounting provisions and ALLL; the extent to which First Horizon's accounting was consistent with OCC guidance and Generally Accepted Accounting Principles ("GAAP"); the sufficiency of financial models used for forecasting losses in specialized loan portfolios; the requirements for adequate risk management of diverse banking practices, and other matters necessitating expert testimony.  Bank holding companies and banks have become complex institutions.  In this case Plaintiffs have alleged that at the beginning of the Company Stock class period, members of First Horizon's management were treating the

14

company like a community bank when it had grown quickly into a huge financial institution and

that the management was not appropriately controlling the company and managing its risks.[4]

**B.      The First Funds Claims Also Faced Significant Risks.**

Plaintiffs' First Funds claims also faced significant risks.  At the time the parties entered

into the Settlement, only one case challenging excessive fees in a 401(k) plan had proceeded to

judgment on the merits in favor of plaintiffs, and then only partly in favor of plaintiffs.  See

Tibble v. Edison Int'l, 2010 WL 2757153 (C.D. Cal. July 8, 2010).[5]  The plaintiff class in Tibble

received a judgment of $370,732.  See Tibble v. Edison Int'l, 2010 WL 3239443 (C.D. Cal. Aug.

9, 2010).  On the other hand, many other 401(k) fee cases have been resolved against plaintiffs

with no recovery at all.  See, e.g., Hecker v. Deere & Co., 556 F.3d 575 (7th Cir. 2009); Loomis

v. Exelon Corp., No. 07-CV-4900, 2009 WL 4667092 (N.D. Ill. Dec. 9, 2009); Taylor v. United

Technologies Corp., No. 2:06-CV-1494, 2009 WL 535779 (D. Conn. Mar. 3, 2009).

While some cases involving proprietary funds have survived motions to dismiss[6] and

obtained settlements,[7] there were numerous obstacles and risks facing the First Funds Class in

this case, including the statute of limitations.  See Fuller v. SunTrust Banks, Inc., Civil Action

---

[4] It is Plaintiffs' view that they were stymied in their proof of those allegations by the lack of adequate controls at the beginning of the Company Stock class period.  It is common to be able to prove such facts through the internal audit function's review of the company.  But Plaintiffs maintain that this function was inadequate and made very few factual findings until well into the class period.  Plaintiffs determined that most of FHN's alleged problems were first identified by the OCC and virtually every document Plaintiffs identified as significantly helpful to prove Plaintiffs' allegations as to problems at First Horizon in 2006-2007 were subjected to a challenge by OCC and First Horizon based on the bank examiner's privilege.  The obstacles to proof faced by Plaintiffs based on the assertion of the privilege were substantial.

[5] Subsequent to the mediation, a second case resulted in a favorable judgment for Plaintiffs.  See Tussey v. ABB, Inc., No. 2:06-CV-04305-NKL, 2012 WL 1113291 (W.D. Mo. March 31, 2012).

[6] See Leber v. CitiGroup, Inc., No. 07-9329, 2011 WL 5428784 (S.D.N.Y. Nov. 8, 2011); Gipson v. Wells Fargo & Co., No. 08-4546, 2009 WL 702004 (D.Minn. Mar. 13, 2009).

[7] See Figas v. Wells Fargo & Co., No. 08-4546 (D. Minn. 2010) ($17.5 million settlement); Mehling v. N.Y. Life Ins. Co., 2007 WL 3145344 (E.D. Pa. 2007) ($14 million); Franklin v. First Union Corp., Civil Action No. 99-CV-344 (E.D. Va. 2001) ($26 million).

No. 1:11-CV-784-ODE, 2012 WL 1432306, *10-11 (N.D. Ga. March 20, 2012) (finding that plaintiffs had actual knowledge of proprietary funds' performance and fees from disclosures in the plan documents and individual fund prospectuses).  Plaintiffs also faced uncertainty surrounding the measure of losses and relevant benchmarks and therefore questions about the amount of losses, as well as a defense on the merits.  The uncertainty of the outcome and the risk of establishing liability and losses at trial, and likely appeals, favor the Settlement, which provides a certain benefit to Class Members.

**C.    This Settlement Is A Fair And Reasonable Compromise.**

In evaluating a proposed settlement of a class action, a district court must examine the terms of the settlement and the process by which the settlement was arrived at, to make sure that the terms are reasonable and that the settlement is not the product of fraud, overreaching, or collusion.  See Clark Equipment Co. v. Int'l Union, Allied Industrial Workers, 803 F.2d 878, 880 (6th Cir. 1986) (per curiam).  Evaluation and approval of the settlement is committed to the sound discretion of the district court and its judgment is reviewed deferentially.  Id.  The fact that a plaintiff might have received more if the case had been fully litigated is no reason not to approve the settlement.  Id.  As the Sixth Circuit has explained (at General Motors, 497 F.3d at 631):

> Our task is not to decide whether one side is right or even whether one side has the better of these arguments.  Otherwise, we would be compelled to defeat the purpose of a settlement in order to approve a settlement.  The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement.

The parties here are plainly using settlement to resolve a legitimate legal and factual dispute in an unresolved area of law.  As the Court is well aware from the arguments it was required to address in ruling on the motion to dismiss, motion for summary judgment, request for

a certificate of appealability, and Plaintiffs' class certification motions, this case presents numerous complex issues that do not lend themselves to simple resolution.

With regard to other factors relevant to preliminary approval, ERISA fiduciary breach settlements promote the public interest in protecting pension benefits and providing a uniform standard of conduct for ERISA fiduciaries.  See Conkright v. Frommert, 130 S.Ct. 1640, 1649 (2010) (noting ERISA's uniform standards of conduct).  More generally, the public interest is served by encouraging the settlement of litigation.  Rotuna v. West Customer Management Group, LLC, 2010 WL 2490989, at *6 (N.D. Ohio June 15, 2010).

Further, there is no suggestion here of fraud or collusion.  Class Counsel and defense counsel are among the most experienced ERISA lawyers in the country.  Ellen Doyle filed the first 401(k) case involving a challenge to the prudence of investment in employer securities in 1997, years before the Enron case.  Ms. Doyle was trial counsel in DiFelice v. US Airways, one of the handful of employer stock cases tried in this country.  Her opposing counsel in that case was Charles Jackson of Morgan Lewis, one of the lawyers who represents Defendants here.  This Court can determine from the motions practice in this case the vigor with which the parties litigated this matter.

At the time of the settlement, Class Counsel had already advanced some $175,780.06 in expenses for the Class, including $86,215.00 for experts, before expert reports were due and before expert depositions occurred.  Plaintiffs anticipated substantially greater costs for experts and rebuttal experts if the case proceeded towards trial.

Class Counsel is of the firm opinion that the settlement is fair, reasonable, and adequate, and in the best interests of the Class.  All Named Plaintiffs have been consulted and are in agreement that the settlement is fair, reasonable, and adequate.  To date, only one class member has opposed the settlement, and the public interest is served because all parties are satisfied with

17

this resolution.  The federal courts will be spared significant further litigation, including a trial that could last weeks and the inevitable appeals.

Consistent with the terms of the Settlement Agreement, the Settlement has been reviewed by Nicholas Saakvitne, an Independent Fiduciary (Report attached as Ex. 4 to Doyle Declaration).  Mr. Saakvitne acts as ERISA Plan Administrator and/or Trustee for more than 150 employee benefit plans; his office has coordinated tens of thousands of benefit distributions. The cumulative total of plan assets for which he has had fiduciary responsibility exceeds $1 billion. Mr. Saakvitne also acts as Trustee and Independent Fiduciary for Employee Stock Ownership Plans ("ESOPs") (including stock sale transactions and subsequent distributions); he currently serves as trustee, co-trustee or ESOP Plan committee member for more than 50 ESOPs.  Mr. Saakvitne was retained as the Independent Fiduciary to evaluate whether the Settlement is in the best interest of participants and beneficiaries and to make a recommendation regarding issuance of a release on the Plan's behalf in accordance with Prohibited Transaction Class Exemption 2003-39.  He has expressed the opinion that the Settlement is reasonable and in the best interests of participants and beneficiaries and satisfies the Department of Labor requirements regarding plan wide settlements.  A copy of his report will be filed in support of the settlement.  It is respectfully submitted that the Independent Fiduciary's findings regarding the Settlement signify its fairness and reasonableness.

In addition, the Settlement is valuable and immediate for class members.  The Class will receive $6 million in cash, less the cost of notice, settlement administration, attorneys' fees and expenses, taxes, case contribution awards, and one-half the cost of an independent fiduciary to evaluate the settlement.  The cash received by the members of the Settlement Class is a concrete monetary benefit that will be paid to the Plan and allocated to class members' Plan accounts within a few months of final approval.

For all these reasons, the Settlement is fair, reasonable, and adequate and should be finally approved.

## V.      THE AMENDED PLAN OF ALLOCATION SHOULD BE APPROVED

Review of the Amended Plan of Allocation[8] falls within this Court's broad supervisory power over settlements.  In assessing a plan of allocation, "[t]he same standards of fairness, reasonableness and adequacy that apply to the settlement apply to the Plan of Allocation." Retsky Family Ltd P'ship v. Price Waterhouse LLP, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 6, 2001).  The "'adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed settlement is fair and reasonable in light of that information.'"  In re Price line.com, Inc., 2007 WL 2115592, at *4 (D. Conn. July 19, 2007); White v. NFL, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (affording "considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of settlement).

Based on loss estimates provided by Plaintiffs' expert, the Amended Plan of Allocation provides that eighty-five percent (85%) of the Distribution Amount will be allocated to the members of Subclass 1 and Subclass 3 (collectively, the "Stock Fund Class").  The remaining fifteen percent (15%) of the Distribution Amount will be allocated to the members of Subclass 2 and Subclass 4 (collectively, the "First Funds Class").  The Stock Fund portion of the Distribution Amount will be allocated *pro rata* in accordance with the Stock Fund Class Members' net losses in the Stock Fund during the Stock Fund Class Period; the formula is set

---

[8]Plaintiffs replaced the original Plan of Allocation submitted to the Court as Exhibit D to the parties' Settlement Agreement (Doc. 189-5) with the Amended Plan of Allocation filed August 7, 2012 (Dkt. #193-1).  The changes in the Amended Plan of Allocation concern only the allocation formula for the First Funds claims.  The Amended Plan of Allocation does not change the 85/15 split in the recoveries for the Stock Fund Class and the First Funds Class.  Nor does it change the allocation formula for the Stock Fund claims.

forth in the Amended Plan of Allocation.  See Dkt. #193-1.  The First Funds portion of the

Distribution Amount will be allocated among the First Funds Class Members in accordance with

their quarterly balances in the Capital Appreciation Fund, the Core Equity Fund and the

Intermediate Bond Fund during the First Funds Class Period, according to procedures set forth in

the Amended Plan of Allocation which account for the different level of losses attributable to

each of the Funds and the timing of class members' investments in the respective Funds.

Distributions to current Plan participants will be made by allocating recovery amounts into their

individual Plan accounts, while distributions to former Plan participants will be made by

reopening or creating a new account in the Plan to facilitate a tax-favored distribution to the

Class Member.[9]  A "plan of allocation that reimburses class members based on the extent of their

injuries is generally reasonable."  In re Oracle Sec. Litig., 1994 U.S. Dist. LEXIS 21593, at *3

(N.D. Cal. June 16, 1994); In re AOL Time Warner, Inc. Sec. & ERISA Litig., 2006 U.S. Dist.

LEXIS 17588, at *59 (S.D.N.Y. 2006).  The Amended Plan of Allocation here is similar to plans

approved in similar settlements, provides a simple, neutral, and fair structure for allocation

among Class Members, and should be approved as fair, reasonable, and adequate.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the

Settlement and approve the Amended Plan of Allocation.

---

[9] A $20.00 *de minimis* exception will be applied for Class Members who no longer have account
balances with the Plan at the time of final approval in light of the costs associated with reopening
Plan accounts and effecting a distribution.

August 14, 2012                              Respectfully submitted,

                                             /s/ Ellen M. Doyle
                                             Ellen M. Doyle (PA Bar 21854)
                                             edoyle@stemberfeinstein.com
                                             Pamina Ewing
                                             pewing@stemberfeinstein.com
                                             Joel R. Hurt
                                             jhurt@stemberfeinstein.com
                                             Maureen Davidson-Welling
                                             mdavidsonwelling@stemberfeinstein.com

                                             **STEMBER FEINSTEIN DOYLE PAYNE**
                                             **& KRAVEC, LLC**
                                             429 Forbes Avenue
                                             Allegheny Building, 17th Floor
                                             Pittsburgh, PA  15219
                                             T: 412.281.8400
                                             F: 412.281.1007

                                             *Attorneys for Plaintiffs and the Class*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on August 14, 2012, the foregoing document was filed electronically with the Clerk of Court using the ECF system which will send notification of such filing to those persons registered in this case with the ECF system.

Respectfully submitted,

s/ Ellen M. Doyle
Ellen M. Doyle