# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

|  |  |
|---|---|
| JOHN YOST, GERALD L. SANDERS, JOSEPH WETEGROVE, and ANTHONY SMITH, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>FIRST HORIZON NATIONAL CORPORATION, *et al.*,<br><br>        Defendants. | Civil Action No. 2:08-02293-STA-cgc<br><br>District Judge S. Thomas Anderson<br><br>Magistrate Judge Charmiane G. Claxton |

## MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND CASE CONTRIBUTION AWARDS

Ellen M. Doyle (PA Bar 21854)
edoyle@stemberfeinstein.com
Pamina Ewing
pewing@stemberfeinstein.com
Joel R. Hurt
jhurt@stemberfeinstein.com
Maureen Davidson-Welling
mdavidsonwelling@stemberfeinstein.com

**STEMBER FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA  15219
T: 412.281.8400
F: 412.281.1007

*Attorneys for Plaintiffs and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ ii

I.      INTRODUCTION ............................................................1

II.     HISTORY OF THE LITIGATION LEADING TO SETTLEMENT......................1

III.    ARGUMENT .......................................................7

       A.    Class Counsel Are Entitled To Attorneys' Fees Under the Common Fund Doctrine .......................................................7

       B.    A Reasonable Percentage Is an Acceptable Approach for Awarding Attorney's Fees in Common Fund Cases, and in This Case Provides Class Counsel with a Lower Fee Award Than the Alternative Lodestar Approach .......................................................8

       C.    The Requested Fee Award Is Reasonable .............................................10

            1.    The Value of the Benefit Rendered to the Class. ......................10

            2.    Society's Stake in Rewarding Attorneys Who Produce Recoveries in ERISA Fiduciary Breach Cases in Order to Maintain an Incentive to Others. ................................10

            3.    All Professional Services Were Performed, and Costs were Advanced, on a Purely Contingent Basis. ..................................13

            4.    The Value of the Services on an Hourly Basis. ........................13

            5.    The Complexity of the Litigation. .............................................15

            6.    The Professional Skill and Standing of Counsel on Both Sides. ................................18

       D.    Class Counsel's Expenses are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained ...........................................19

       E.    Case Contribution Awards to the Plaintiffs Should Be Granted ...........19

IV.    CONCLUSION .......................................................20

# TABLE OF AUTHORITIES

**Cases**

Armistead v. Vernitron Corp., 944 F.2d 1287 (6th Cir. 1991) ...................................................... 7

Bailey v. AK Steel Corp., 2008 WL 553764 (S.D.Ohio Feb. 28, 2008) .................................... 8, 9

Blum v. Stenson, 465 U.S. 886 (1984) ........................................................................................ 7

Boeing Co. v. Van Gernert, 444 US. 472 (1980) .......................................................................... 7

Bowling v. Pfizer, Inc., 102 F.3d 777 (6th Cir. 1996) .................................................................... 9

Brieger v. Tellabs, Inc., 2009 WL 1565203 (N.D.Ill. June 1, 2009) ........................................... 16

Bussie v. Allmerica Fin. Corp., 1999 US. Dist. LEXIS 7793 (D.Mass. May 19, 1999) ............. 20

Central R. & Banking Co. v. Pettus, 113 U.S. 116 (1885) ........................................................... 7

Charter Communications, 2005 U.S. Dist. LEXIS 14772 (ED. Mo. June 30, 2005) ................... 15

Clevenger v. Dillards, Inc., Mercantile Stores Pension Plan, 2007 WL 764291
    (S.D. Ohio March 9, 2007) ..................................................................................... 7, 9

Collins v. Olin Corp., No. 03-CV-945, 2010 US. Dist. LEXIS 39862 (D. Conn. Apr. 21, 2010) 19

Connectivity Systems Inc. v. National City Bank, 2011 WL 292008
    (S.D.Ohio Jan. 26, 2011) ........................................................................................ 15

Dekro v. Stern Bros. & Co., 571 F.Supp. 97 (W.D. Mo. 1983) ................................................... 15

DiFelice v. U.S. Airways, Inc., 436 F.Supp.2d 756 (E.D. Va. June 26, 2006) ............................ 16

DiFelice v. U.S. Airways, Inc., 497 F.3d 410 (4th Cir. 2007) ...................................................... 16

Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000) ....................................... 11

In re AOL Time Warner S'holder Deriv. Litig., 2009 US. Dist. LEXIS 124372
    (S.D.N.Y. November 9, 2009) ................................................................................... 14

In re Broadwing, Inc. ERISA Litigation, 252 F.R.D. 369 (S.D. Ohio, Oct. 5, 2006) .................. 11

In re Cardizem CD Antitrust Litigation, 218 F.R.D. 508 (E.D.Mich. 2003) ................................. 8

In re Computer Sciences Corp. Erisa Litigation, 635 F.Supp.2d 1128 (C.D. Cal. 2009) ............. 16

In re Countrywide Financial Corp. Customer Data Sec. Breach Litigation, 2010 WL 3341200
(W.D.Ky. Aug. 23, 2010) ......................................................................................... 15

In re Delphi Corp. Securities, Derivative & "ERISA" Litigation, 248 F.R.D. 483
(E.D.Mich. 2008) ..................................................................................................... 20

In Re F&M Distributors, Inc. Securities Litigation, 1999 U.S. Dist. LEXIS 11090
(June 29, 1999) ........................................................................................................... 8

In re Giant Interactive Group, Inc. Sec. Litig., 2011 US. Dist. LEXIS 127634
(S.D.N.Y. Nov. 2, 2011) ........................................................................................... 12

In re National Century Financial Enterprises, Inc. Investment Litigation, 2009 WL 1473975
(S.D.Ohio 2009) ......................................................................................................... 8

In re Priceline.com, Inc. Securities Litigation, 2007 WL 2115592 (D.Conn. July 20, 2007) ...... 12

In re Prudential Ins. Co. of Amer. Sales Practices Litig., 148 F.3d 283 (3rd Cir. 1998)............... 9

In re St. Paul Travelers Securities Litigation, 2006 WL 1116118 (D.Minn. April 25, 2006) ...... 15

In re Telectronics Pacing Sys., Inc., 186 F.R.D. 459 (S.D.Ohio 1999) ......................................... 9

In re Tyco, Int'l, Ltd,525 F.Supp.2d 249 (D.N.H. 2007)............................................................ 12

In re Visteon Corp. ERISA Litig., 2007 U.S. Dist. LEXIS 96023 (E.D.Mich. Mar. 9, 2007) ....... 8

In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291 (9th Cir. 1994).......................... 13

In re WorldCom, Inc. Sec. Litig., 388 F.Supp.2d 319 (S.D.N.Y. 2005) ..................................... 12

In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation, 364 F.Supp.2d 980
(D.Minn. 2005) ............................................................................................. 14, 15, 19

International Union, United Auto., Aerospace, and Agr. Implement Workers of America v.
General Motors Corp., 2008 WL 2968408  (E.D.Mich. July 31, 2008).................................. 14

International Union, United Automobile, Aerospace, And Agricultural Implement Workers of
America v. General Motors, Corp., 2:07-cv-14074-RHC-VMM
(E.D.Mich. September 9, 2008) ................................................................................ 14

Langraff v. Columbia Healthcare Corp., 2000 U.S. Dist. LEXIS 28 21831
(M.D. Tenn. May 24, 2000)....................................................................................... 16

LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248 (2008)............................................... 11

Lingis v. Motorola, Inc., 649 F.Supp.2d 861 (N.D. Ill. 2009)..................................................... 16

Maley v. Del Global Techs. Corp., 186 F.Supp.2d 358 (S.D.N.Y. 2002) ................................... 12

Manners v. American General Life Ins. Co., 1999 WL 33581944
    (M.D.Tenn. Aug. 10, 1999) ................................................................................... 9, 13

Nelson v. IPALCO Enterprises, Inc., 480 F.Supp.2d 1061 (S.D. Ind. 2007) ............................ 16

Petrovic v. Amoco Oil Co., 200 F.3d 1140 (8th Cir. 1999)........................................................ 14

Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188 (6th Cir. 1974) ........................................ 10

Rankin v. Rots, 2006 WL 1791377 (E.D. Mich. June 27, 2006)................................................... 7

Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513 (6th Cir. 1993) ........................ 8, 9, 10

Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278 (2d Cir. 1987).................... 19

Seiffer v. Topsy Int'l, Inc., 70 F.R.D. 622 (D. Kan. 1976)........................................................... 10

Shirk v. Fifth Third Bancorp, 2009 WL 692124 (S.D.Ohio Jan. 29, 2009) ................................ 16

Smillie v. Park Chem. Co., 710 F.2d 271 (6th Cir. 1983) ........................................................... 10

Spann v. AOL Time Warner, No. 02-CV-8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005).... 12

Stewart v. Thorpe Holding Co. Profit Sharing Plan, 207 F.3d 1143 (9th Cir. 2000) ................... 11

Tatum v. R.J. Reynolds Tobacco Co.,  2011 WL 2160893 (M.D.N.C. 2012) ............................ 16

Trustees v. Greenough, 105 U.S. 527 (1882) ............................................................................... 7

Wal-Mart v. Visa USA, Inc., 396 F.3d 96 (2d Cir. 2005) ........................................................... 15

**Statutes**

Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 ...................................... 1

**Other Authorities**

Richard Posner, *Economic Analysis of Law,* § 21.9 (3d ed. 1986) ............................................. 13

**Rules**

Fed.R.Civ.P. 56(f)................................................................................................................... 2, 17

## I.    INTRODUCTION

Class Counsel respectfully submit this memorandum in support of their motion for an award of attorneys' fees in the amount of $1.8 million or 30% of the Settlement Amount[1] of $6 million, for reimbursement of costs and expenses of $175,780, and for an order granting Case Contribution Awards of $7,500 for the four Named Plaintiffs.  The remainder of the Settlement Fund will be allocated to Class Members under the Amended Plan of Allocation.[2]  Defendants do not oppose Plaintiffs' motion.  Class Counsel have vigilantly prosecuted this complex action, devoting many attorney hours on a wholly contingent basis with no guarantee of recompense.  The Settlement obtained by Class Counsel is a good result for the Class in light of the extraordinary risks involved in this type of litigation.  Class Counsel's lodestar in this case is in excess of $2.6 million, making their $1.8 million percentage common fund request particularly reasonable.

## II.    HISTORY OF THE LITIGATION LEADING TO SETTLEMENT

From day one in this case, Plaintiffs focused on investigating and finding facts sufficient from which to infer imprudent investment selection in the First Funds and to overcome any presumption of prudence in the investment in company stock.  Class Counsel were well aware that many ERISA cases, particularly those alleging imprudent investment in employer securities, have been dismissed for failure to allege sufficient supporting detail.  Plaintiffs' 144-paragraph initial complaint (Dkt. #1), filed May 9, 2008, included numerous facts gleaned from First Horizon's public filings and from Plaintiffs' investigation.  Plaintiffs alleged claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA"), seeking to recover losses to the First Horizon National Corporation Savings Plan ("Plan").  Prior

---

[1] All capitalized terms herein not otherwise defined are derived from the Settlement Agreement and Release ("Settlement Agreement") filed on May 2, 2012 (Dkt. #189-1).

[2] The Amended Plan of Allocation was filed on August 7, 2012 (Dkt. #193).

to filing their complaint, Class Counsel extensively researched and investigated not only the underlying facts but also the pertinent law.

Plaintiffs alleged that Defendants unlawfully selected the First Funds, a family of First Horizon's proprietary mutual and money market funds, as a Plan investment option without employing a prudent selection process untainted by conflict.  Plan fiduciaries maintained investment offerings in the First Funds even though most of those funds under-performed their peers.  Plaintiffs also alleged that Defendants unlawfully invested Plan assets in First Horizon common stock, alleging that this was an imprudent retirement investment because, *inter alia*, (1) First Horizon had assumed massive new risks of default and loss through its banking practices in an effort to fuel national growth; (2) the Company lacked the credit review, audit, or accounting infrastructure to adequately identify and manage those risks, and (3) it did not properly reserve for the losses on its risky products, so that the Plan was purchasing shares of First Horizon stock at an inflated price.

On September 17, 2008, Plaintiffs filed a 201-paragraph First Amended Complaint, naming a new plaintiff and new Defendants, and alleging five claims for relief.  Dkt. #29.  Defendants proceeded to file a motion to stay discovery pending resolution of their forthcoming motion to dismiss (Dkt #30), which Plaintiffs opposed (Dkt. #35).  On October 21, 2008, Defendants filed a Motion to Dismiss with 31 supporting exhibits (Dkt. #41) and a Motion for Summary Judgment (Dkt. #43) with more than 20 exhibits (Dkt. #43-3).

To rebut Defendants' motion for summary judgment, Plaintiffs filed a motion under Fed.R.Civ.P. 56(f), seeking discovery prior to any ruling on Defendants' summary judgment motion.  Dkt. ## 55-2, 56.  Plaintiffs' 96-paragraph Fed.R.Civ.P. 56(f) Affidavit focused on the facts needed to address Defendants' arguments and was extremely detailed.  Dkt. #57-1.  Defendants opposed Plaintiffs' motion, and Plaintiffs filed a reply brief.  Dkt. ##67, 70.  After

the Magistrate Judge granted Plaintiffs leave to take discovery, Defendants filed objections.  Dkt. #77.  On April 30, 2009, the Court denied without prejudice Defendants' Motion for Summary Judgment on the First Funds claims, citing Plaintiffs' need for discovery.  Dkt. #80.

In response to Defendants' motion to dismiss (Dkt. #85), Plaintiffs filed both an opposition brief (Dkt #85) and a surreply brief (Dkt. #92) to Defendants' reply brief (Dkt. #86).  On September 30, 2009, the Court granted in part and denied in part Defendants' Motion to Dismiss.  Dkt. #93.  The Court concluded that Plaintiffs properly stated a claim in Count I that Defendants breached their fiduciary duty by continuing to invest Plan assets in First Horizon stock when it was no longer prudent to do so but failed to state a claim in Count I to the extent that Plaintiffs were alleging that Defendants breached their fiduciary duties by not amending the Plan to alter certain provisions.  The Court dismissed Count III, and concluded that Plaintiffs stated their derivative claims for failure to monitor (Count IV) and for breaches of co-fiduciaries (Count V) with respect to Count I.  To the extent that Plaintiffs failed to state the predicate claims in Counts I and III, the Court dismissed these aspects of Counts IV and V.

Defendants filed a motion for a certificate of appealability with respect to the Court's dismissal ruling (Dkt. #95), which Plaintiffs opposed (Dkt. #96).  The Court granted a certificate of appealability on March 22, 2010.  Dkt. #103.  Defendants then filed a motion for interlocutory appeal in the Sixth Circuit, which Plaintiffs opposed and the Sixth Circuit denied.

Plaintiffs filed a fact-intensive motion for class certification on January 29, 2010, with 26 supporting exhibits.  Dkt. #98.  Plaintiffs filed an amended class certification motion on December 10, 2010, providing additional facts.  (Dkt. #123).  Defendants opposed this motion (Dkt. #138), and Plaintiff filed a fact-intensive reply (Dkt. #143).

On September 3, 2010, Defendants filed a motion to reconsider the Court's earlier dismissal ruling (Dkt. #105), which Plaintiffs were required to oppose (Dkt. #108). The Court denied Defendants' motion on October 19, 2010. Dkt. #117.

On October 1, 2010, Plaintiffs filed a motion for leave to file an even more detailed 330-paragraph Second Amended Complaint, adding two new Plaintiffs and additional factual allegations. Dkt. #109. The Court granted this motion. Dkt. #111. On February 25, 2011, Plaintiffs filed a 330-paragraph Third Amended Complaint, omitting a Plaintiff. Dkt. #134.

The Court on June 3, 2011 entered an Order conditionally granting in part, denying in part Plaintiffs' amended motion for class certification (Dkt. #147). The Court conditionally certified two Plaintiff classes: (i) participants who invested in FHN Stock from January 1, 2006 to July 14, 2008; and (ii) participants who invested in the First Funds from May 9, 2002 to June 5, 2006, conditioning certification on formulation of a subclass of class members who signed releases when leaving their employment with First Horizon.

On June 23, 2011, Plaintiffs filed a motion to resolve a disputed claim of privilege concerning third party documents produced by FHN's accounting consultant, Ernst & Young LLC. Dkt. #150. The disputed documents concerned the Office of the Comptroller of the Currency ("OCC"); the OCC claimed that the documents produced to Plaintiffs were subject to the bank examination privilege. The OCC and Defendants opposed Plaintiffs' motion (Dkt. ##160, 163), and Plaintiffs filed a reply brief in support of their motion (Dkt. #167). The Court granted in part and denied in part the motion. Dkt. #171. Plaintiffs thereafter filed a renewed motion to resolve their claim of privilege. Dkt. #178.

With Defendants' leave, Plaintiffs on September 30, 2011 filed a 331-paragraph Fourth Amended Complaint (Dkt. #175) which set forth four subclasses ("Subclasses"). Plaintiffs also added two new named plaintiffs as class representatives for the release subclasses.

Plaintiffs engaged in significant discovery in this case, including seeking, obtaining, reviewing and analyzing more than 24,434 documents consisting of 132,401 pages from the First Horizon Defendants, as well as more than 44,000 pages of documents from third parties KPMG, LLP, Ernst & Young, PricewaterhouseCoopers, and Mercer.  Because FHN's management structure was organized into subject area committees, and given the broad focus of Plaintiffs' claims of Company-wide problems in risk management, Plaintiffs focused heavily on work performed by FHN's internal management committees to demonstrate Company-wide risk management problems and the information known to them that should have been known by Plan fiduciaries.  Plaintiffs also focused on Committees providing information relevant to accounting problems, particularly as to the methodology used to set the allowance of loan and lease losses ("ALLL").  Plaintiffs analyzed agendas, minutes and reporting to and from numerous FHN boards and committees.[3]  Plaintiffs also conducted multiple internet searches and investigation into FHN's policies and practices and reviewed numerous SEC filings, including 10-Ks, 11-Ks, 8-Ks, 10-Qs, proxy statements and other publicly available information.  Plaintiffs compared the public filings with the internal reporting to management committees below the Board level.

Class Counsel became concerned at the lack of documentation inside First Horizon as to problems with its management, control, and evidence, particularly in the early part of the Company Stock Class Period, outside of the context of communications with OCC.  First Horizon and third parties withheld or redacted more than a hundred such communications which

_____

[3] These include the Administrative Committee; Asset Liability Committee; Audit Committee; Base Rate Committee; Board of Directors; C&I Policy Committee; Capital Management Committee; Consumer Governance Committee; Corporate Compliance Risk Committee; Credit Policy & Executive Committee; Credit Risk Management/Senior Credit Policy Committee; Disclosure Compliance Committee; Earnings-at-Risk Committee; Enterprise Portfolio Committee; Enterprise-Wide Risk/Return Management Committee; Financial Counterparty Credit Committee; HLTV Committee; Liquidity Committee; MSR Committee; Operational Risk Committee; Pricing Committee; Real Estate Policy Committee; Regulatory Compliance Committee; Reputational Risk Committee; Retirement Investment Committee; and Securitization Committee Watch List Committee.

Plaintiffs discovered when they were asked to return documents already produced to them. Plaintiffs filed a motion to resolve a disputed claim of privilege concerning third party documents, referenced above, and also sought to obtain waiver of the bank examination privilege from the OCC in order to demonstrate First Horizon's failure to comply in numerous respects with existing regulatory guidance. The OCC aggressively contested Plaintiffs' access to any documents referencing its guidance and supervision.

In addition, Plaintiffs retained and advanced expenses for four consulting experts knowledgeable in the areas of bank accounting, credit and banking practices, and investment management, to assist them in evaluating First Horizon's policies, practices and procedures and its compliance with regulatory guidance and generally accepted accounting principles.

Following months of negotiations, the parties agreed in principle to settle this case and signed a term sheet at a mediation held on November 8, 2011 before retired United States District Judge James Robertson. The parties executed the Settlement Agreement on April 3, 2012, and Plaintiffs moved for preliminary approval on May 2, 2012. In its Preliminary Approval Order entered May 16, 2012 (Dkt. #191), the Court adopted the modified class definition proposed by Plaintiffs and not opposed by Defendants. Id. at 2-3.

Finally, the Court appointed Class Counsel as counsel for the Class, stating that it did so for the same reasons expressed in its June 3, 2011 Order. Id. The Court there held that Plaintiffs had met their burden to demonstrate adequacy, noting that Defendants had not challenged Class Counsel's qualifications. Dkt. #147 at 25-26. The Court concluded that Class Counsel Ellen Doyle and Stember Feinstein Doyle Payne and Kravec LLC ("SFDPK") were well-qualified to represent Plaintiffs and the Class, observing as to Ms. Doyle: "Counsel has shown that she has experience litigating a number of ERISA class actions similar to the case at bar. Therefore, the Court concludes that this adequacy criterion is satisfied." Id. at 26.

In accordance with the Court's Preliminary Approval Order, Class Counsel disseminated Class Notice which informed Class members that counsel would seek attorney's fees of 30% as well as reimbursement of costs and expenses of approximately $175,000, and case contribution awards of $7,500 for each of the four Named Plaintiffs.  To date, only one objection to any of these requests has been filed.[4]

## III.   ARGUMENT

### A.   Class Counsel Are Entitled To Attorneys' Fees Under the Common Fund Doctrine.

It has long been recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  Boeing Co. v. Van Gernert, 444 US. 472, 478 (1980).  The equitable doctrine of a common fund "permits the courts to award fees to a party recovering a fund or property for the benefit of others in addition to himself out of the fund or property so recovered."  See Armistead v. Vernitron Corp., 944 F.2d 1287, 1301-1302, 1304 (6th Cir. 1991).  The purpose of this doctrine is to avoid unjust enrichment and to spread litigation costs proportionately among all beneficiaries.  Id.  The common fund doctrine is firmly rooted in American case law.  Trustees v. Greenough, 105 U.S. 527 (1882); Central R. & Banking Co. v. Pettus, 113 U.S. 116 (1885); Blum v. Stenson, 465 U.S. 886, 900 n.16 (1984), and has been applied in ERISA cases.  See, e.g., Clevenger v. Dillards, Inc., Mercantile Stores Pension Plan, 2007 WL 764291, *1 (S.D. Ohio March 9, 2007) ("As this Court noted in an ERISA class action, the common fund method for awarding attorney's fees applies when the parties have settled the case."); Rankin v. Rots, 2006 WL 1791377 (E.D. Mich. June 27, 2006).

---

[4] In her two-paragraph objection, Suzanne M. Russell registered her opposition to the fees and expenses to be received by Class Counsel and stated:  "I recommend that the Court either dismiss this case or toss the entire $6,000,000 Settlement ($100 bills) into a pile and allow the 'civil litigators' to savage themselves as they fight over the money."  See Dkt. #192.

In this case, the parties agreed that Class Counsel would seek an award of attorneys' fees from the $6 million Settlement Fund in an amount not more than 30% of the Fund, and the Class Notice specifically informed all Class members of that provision.

**B.      A Reasonable Percentage Is an Acceptable Approach for Awarding Attorneys' Fees in Common Fund Cases, and in this Case Provides Class Counsel with a Lower Fee Award than the Alternative Lodestar Approach.**

Courts in this Circuit and elsewhere have regularly awarded attorneys' fees as a percentage of the gross recovery in the range sought here where common funds have been created by the efforts of counsel.  In re Cardizem CD Antitrust Litigation, 218 F.R.D. 508, 532 (E.D.Mich. 2003) (recognizing that fees of 20–30% are generally awarded in this Circuit); In Re F&M Distributors, Inc. Securities Litigation, 1999 U.S. Dist. LEXIS 11090, at *19–20 (June 29, 1999) (awarding 30% fee); In re National Century Financial Enterprises, Inc. Investment Litigation, 2009 WL 1473975, at *18 (S.D.Ohio 2009) (recognizing that the acceptable range of fee awards is 20% to 50% of the common fund); In re Visteon Corp. ERISA Litig., 2007 U.S. Dist. LEXIS 96023 (E.D.Mich. Mar. 9, 2007) (awarding 28% of $7.6 million settlement fund).

Courts may also consider or apply a "lodestar" approach, which reviews attorney time under adjusted hourly rates with a "multiplier" accounting for risk and other factors.  Courts often use the lodestar approach as a check on the reasonableness of a percentage fee award.  The general rule is that the request be reasonable under the circumstances.  See Bailey v. AK Steel Corp., 2008 WL 553764, *1 (S.D.Ohio Feb. 28, 2008) ("Trial courts within the Sixth Circuit have the discretion to calculate an award of attorney fees in common fund cases by using either a percentage of the fund calculation or a lodestar/multiplier approach….the overriding requirement is that the award 'be reasonable under the circumstances'") (citing Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513, 516-51 (6th Cir. 1993)).  The trial court is given discretion as to what method to use.  Rawlings, 9 F.3d at 517 ("For the reasons stated, we conclude that use of

8

either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases, and that the determination of which method is appropriate in any given case will depend upon its circumstances.").

Under the percentage of recovery approach, courts evaluate fee requests as a percentage of the recovery achieved.  Many courts have found that for class action common fund settlements, "a percentage of recovery calculation [is] the most appropriate measure of the attorneys' fee award."  Bailey, 2008 WL 553764, at *1 n.2 (citing In re Prudential Ins. Co. of Amer. Sales Practices Litig., 148 F.3d 283, 336 (3rd Cir. 1998)).

In the Sixth Circuit, the trial court is given the discretion as to what method to use, and the percentage of recovery method has been specifically listed as an appropriate approach.  Rawlings, 9 F.3d at 517 ("For the reasons stated, we conclude that use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases, and that the determination of which method is appropriate in any given case will depend upon its circumstances.").  Since Rawlings, numerous courts in this Circuit have used the percentage of the fee method in awarding fees in common fund cases.[5]

Here, Class Counsel's lodestar is in excess of $2.6 million.  Declaration of Ellen M. Doyle (filed herewith) ¶ 16 and Ex. 1.  Awarding 30% of the common fund results in a lower fee than would the lodestar approach and provides no multiplier for risk.  The percentage of a

---

[5] See, e.g., Clevenger v. Dillards, Inc., Mercantile Stores Pension Plan, 2007 WL 764291, *2 (S.D.Ohio March 9, 2007) ("The Court finds that it is appropriate to award Class Counsel a percentage of recovery fee in this litigation."  Court awarded fees in the amount of 29% of gross settlement fund in ERISA pension case); In re Telectronics Pacing Sys., Inc., 186 F.R.D. 459, 483 (S.D.Ohio 1999) ("the preferred method in common fund cases has been to award a reasonable percentage of the fund to Class Counsel as attorneys' fees"), rev'd on other grounds, 221 F.3d 870 (6th Cir. 2000); Manners v. American General Life Ins. Co., 1999 WL 33581944, *29 (M.D.Tenn. Aug. 10, 1999) ("The preferred approach to calculating attorneys' fees to be awarded in a common benefit case is as a percentage of the class benefit."); Bowling v. Pfizer, Inc., 102 F.3d 777, 780 (6th Cir. 1996) (district court awarded class and special counsel 10% of the $102.5 million that has been paid into the common fund).

recovery approach thus is reasonable and should be used as the basis for a fee award from the common fund.

**C.     The Requested Fee Award Is Reasonable**

In Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188, 1196 (6th Cir. 1974), the Sixth Circuit identified six factors for consideration in determining the reasonableness of a fee award:

1.      The value of the benefit rendered to the class;

2.      Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

3.      Whether the services were undertaken on a contingent fee basis;

4.      The value of the services on an hourly basis;

5.      The complexity of the litigation; and,

6.      The professional skill and standing of counsel on both sides.

Id. at 1196; see also Smillie v. Park Chem. Co., 710 F.2d 271, 275 (6th Cir. 1983).

**1.     The Value of the Benefit Rendered to the Class.**  Through diligent pursuit of the claims and skillful negotiation, Class Counsel obtained a $6 million settlement fund.  This is not a coupon settlement but provides a meaningful recovery to the Plan and participants without the uncertainty and burden of years of litigation in this Court and on appeal.  "The certainty of fixed recovery by way of agreement is often preferable to the vagaries of what might be achieved by a trial."  Seiffer v. Topsy Int'l, Inc., 70 F.R.D. 622, 629 (D. Kan. 1976).  Class Counsel respectfully submit that the establishment of this significant fund is a clear benefit to the Class which supports an award of a 30% percentage fee.

**2.     Society's Stake in Rewarding Attorneys Who Produce Recoveries in ERISA Fiduciary Breach Cases in Order to Maintain an Incentive to Others.**  Absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation.  Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved.  Rawlings, 9 F.3d at 517; In

re Broadwing, Inc. ERISA Litigation, 252 F.R.D. 369, 381-82 (S.D. Ohio, Oct. 5, 2006)("there is a public interest in ensuring that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases"; "[p]rotecting the retirement funds of workers is of genuine public interest.")

Public policy favors encouraging skilled attorneys to bring ERISA suits like this one. Congress passed ERISA to promote the goal of protecting and preserving the retirement savings of American workers.  Given that "[d]efined contribution plans dominate the retirement plan scene today," LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 255 (2008), ensuring that ERISA fiduciaries fully comply with their obligations (including the duty to select and maintain prudent investment alternatives) is of paramount importance in protecting the retirement savings of millions of workers.  See also Stewart v. Thorpe Holding Co. Profit Sharing Plan, 207 F.3d 1143, 1148 (9th Cir. 2000) (ERISA's "most important purpose" was to "assure American workers that they may look forward with anticipation to a retirement with financial security and dignity, without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society.") (citations omitted). Vindicating these critical rights requires the work of skilled and dedicated counsel.

To ensure that the public interest continues to be represented by talented and experienced trial counsel willing to undertake representation in complex ERISA breach of fiduciary class actions on a contingent basis, remuneration should reward counsel for the risk and effort involved in the litigation.  See Goldberger v. Integrated Resources, Inc., 209 F.3d 43,51 (2d Cir. 2000) (recognizing a "commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").  Thus, "[i]n accordance with this sentiment, the Court finds that public policy supports the award of a 33% fee in this case, the better to 'attract well-qualified plaintiffs' counsel who are able to take a case to trial,

11

and who defendants understand are able and willing to do so.'" In re Giant Interactive Group, Inc. Sec. Litig., 2011 US. Dist. LEXIS 127634, at *31 (S.D.N.Y. Nov. 2, 2011) (citing In re WorldCom, Inc. Sec. Litig., 388 F.Supp.2d 319, 359 (S.D.N.Y. 2005)).  See also In re Priceline.com, Inc. Securities Litigation, 2007 WL 2115592, at *5 (D.Conn. July 20, 2007) ("The award of the [30%] requested here will encourage enforcement of the securities laws and support attorneys' decisions to take these types of cases on a contingent fee basis.").

Indeed, "[w]ithout a fee that reflects the risk and effort involved in this litigation, future plaintiffs' attorneys might hesitate to be similarly aggressive and persistent when faced with a similarly complicated, risky case and similarly intransigent defendants." In re Tyco, Int'l, Ltd, 535 F.Supp.2d 249, 270 (D.N.H. 2007) (citing WorldCom, 388 F.Supp.2d at 359) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."); Maley v. Del Global Techs. Corp., 186 F.Supp.2d 358, 373 (S.D.N.Y. 2002) ("Courts have recognized the importance that fair and reasonable fee awards have in encouraging private attorneys to prosecute class actions on a contingent basis . . . on behalf of those who otherwise could not afford to prosecute."); Spann v. AOL Time Warner, No. 02-CV-8238, 2005 WL 1330937, at *3-*4 (S.D.N.Y. June 7, 2005) (awarding 33-1/3% fee, noting that lawsuits such as this create incentives for fiduciaries to comply with ERISA).

It also is noteworthy that Class Counsel faced many risks, including at the pleading stage, summary judgment, class certification, trial and appeal.  Class Counsel's assumption of the risks of these claims should be recognized and rewarded.  The resources available to the multiple Defendants, represented by counsel from a large and well-respected firm, contributed to Class Counsel's need to expend substantial professional resources.  Absent the settlement, Plaintiffs faced years of hard fought litigation, with ultimate uncertainty of success.

**3.    All Professional Services Were Performed and Costs Were Advanced on a**

**Purely Contingent Basis.**  The fee determination must include consideration of the fee's

contingent nature and the difficulties in obtaining a settlement:

> It is an established practice in the private legal market to reward attorneys for
> taking the risk of non-payment by paying them a premium over the normal hourly
> rates for winning contingency cases.  *See* Richard Posner, *Economic Analysis of
> Law,* § 21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the
> market value of the services if rendered on a non-contingent basis are accepted in
> the legal profession as a legitimate way of assuring competent  representation for
> plaintiffs who could not afford to pay on an hourly basis regardless of whether
> they win or lose.

In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994).  See also

Manners v. American General Life Ins. Co., 1999 WL 33581944, at *31 (M.D.Tenn. Aug. 11,

1999) ("The risk of loss in any litigation is quite real. Plaintiffs' counsel's efforts here

demonstrates their commitment to obtaining valuable and meaningful relief for the Class.")

All of Class Counsel's professional time (more than 7,600 hours) was provided on a

purely contingent basis.  Consistent with the Tennessee Rules of Professional Conduct Rule

1.8(e), counsel also advanced all of the costs of the litigation contingent on the outcome,

including the costs of retaining four consulting experts.  Plaintiffs' counsel have received no

compensation during the more than four-year course of this litigation and have spent a

substantial amount of time to obtain this result.  SFDPK is a small firm of about fifteen lawyers.

Taking on a large case without co-counsel necessarily meant foregoing other work so as to

adequately represent the interests of the class here.  Consideration of the contingent nature of the

fees requested supports an award of 30% of the Settlement Fund.

**4.    The Value of the Services on an Hourly Basis.**  ERISA fiduciary breach class

actions alleging imprudent investments are, by their very nature, complicated and time-

consuming.  This is particularly true as to claims of imprudent investments in employer

securities where plaintiffs must overcome a presumption of prudence. Undertaking representation of thousands of participants required a substantial investment of SFDPK's time and resources. While serving as sole counsel in this case increased the efficiencies of handling the litigation, it also increased the burden on SFDPK.

To date, Class Counsel and their staff have spent more than 7,600 hours prosecuting this litigation. Doyle Decl. ¶ 16. They have investigated the facts and law, researched and briefed the merits of the claims and defenses, argued against multiple motions to dismiss, briefed class certification, and prepared for, and successfully negotiated, the terms of the settlement. As set forth in the Doyle Declaration, SFDPK maintains contemporaneous time records for all professional staff. Id. ¶ 17. Hourly rates are based on the assessment by the firm's partners as to the value of their rates in the market place, the hourly rates awarded them in other cases, and their review of the hourly rates of comparable firms and attorneys performing comparable work. Id. Work was supervised by Ellen M. Doyle and to the extent possible was delegated to associates and paralegals. Id. ¶ 21. Class Counsel believe that their hourly rates ranging from $135 to $575 per hour are at least competitive with, and in most cases lower than, the hourly rates of other firms who prosecute ERISA class actions.[6]

Courts often use the lodestar method as a "cross-check" on the percentage-of-recovery determination of a fee award's reasonableness in common fund cases. In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litigation, 364 F.Supp.2d 980, 999 (D.Minn. 2005) (citing Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1156 (8th Cir. 1999)); In re AOL Time Warner S'holder Deriv. Litig., 2009 US. Dist. LEXIS 124372, at *68 (S.D.N.Y. November 9, 2009).

_____

[6] In International Union, United Automobile, Aerospace, And Agricultural Implement Workers of America v. General Motors, Corp., 2:07-cv-14074-RHC-VMM (E.D.Mich. September 9, 2008), the Court awarded SFDPK $594,988.50 as reasonable attorneys' fees and also awarded $245,472.09 in costs, for a total of $840,415.59. See also International Union, United Auto., Aerospace, and Agr. Implement Workers of America v. General Motors Corp., 2008 WL 2968408, at *34 (E.D.Mich. July 31, 2008) (addressing propriety of fee award).

The lodestar value is ascertained by "multipl[ying] hours reasonably expended against a reasonable hourly rate.  Courts in their discretion may increase the lodestar by applying a multiplier based on factors such as the riskiness of the litigation and the quality of the attorneys." Wal-Mart v. Visa USA, Inc., 396 F.3d 96, 122 (2d Cir. 2005).

The negative multiplier requested in this case is substantially lower than the range of fee multipliers requested in similar settlement fund class actions.  See, e.g., Connectivity Systems Inc. v. National City Bank, 2011 WL 292008, *13 (S.D.Ohio Jan. 26, 2011) (multiplier of 2.39 confirmed reasonableness of fee award); In re Xcel Energy, 364 F.Supp.2d at 999 (multiplier of 4.7 based on lodestar); Charter Communications, 2005 U.S. Dist. LEXIS 14772, at *54-57 (ED. Mo. June 30, 2005)(multiplier of 5.6); In re St. Paul Travelers Securities Litigation, 2006 WL 1116118, at *1 (D.Minn. April 25, 2006) (multiplier of 3.9); Dekro v. Stern Bros. & Co., 571 F.Supp. 97, 108 (W.D. Mo. 1983) (multiplier of 2.0); In re Countrywide Financial Corp. Customer Data Sec. Breach Litigation, 2010 WL 3341200, at *10-11 (W.D.Ky. Aug. 23, 2010) (multiplier of 1.2 to confirm reasonableness of fee award).

Consideration of the lodestar value of the professional services provided by Class Counsel, which greatly exceed 30% of the Settlement Fund, supports the requested fee award.

**5.    The Complexity of the Litigation.**  Plaintiffs detail some of the complexities facing Plaintiffs and Class Counsel in their Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement Agreement, filed this date; Plaintiffs herein incorporate by reference this discussion.  In more abbreviated form, there is no clear route to success through summary judgment, trial or on appeal in cases involving claims of imprudent investment in employer securities.  To the best of Plaintiffs' knowledge, five ERISA company

stock fund cases have been tried on the merits: four resulted in defense verdicts[7]; no decision has yet been reached on the fifth.[8]  Further, proceeding past a motion to dismiss, as Plaintiffs have largely done here, is no guarantee of success.  In <u>Shirk v. Fifth Third Bancorp</u>, 2009 WL 692124 (S.D.Ohio Jan. 29, 2009), the district court entered summary judgment for the employer after having denied the employer's motion to dismiss, holding that the evidence was insufficient as a matter of law to rebut the presumption of reasonableness.  <u>Id.</u> at *14.  See also <u>Lingis v. Motorola, Inc.</u>, 649 F.Supp.2d 861 (N.D. Ill. 2009) (granting defendants' motion for summary judgment); and <u>In re Computer Sciences Corp. Erisa Litigation</u>, 635 F.Supp.2d 1128 (C.D. Cal. 2009) (same).

This case involves facts, accounting principles, banking guidance and legal concepts that are extremely complex and require expert testimony.  The Fourth Amended Complaint is 331 paragraphs in length, and the issues as to proof of the merits, proof of causation, establishment of the standard of care for fiduciaries responsible for investments in employer stock, as well as the measurement and amount of losses arising from the fiduciary breaches, are challenging. Plaintiffs' claims require proof which involves highly technical issues, including the propriety of First Horizon's accounting provisions and ALLL; the extent to which First Horizon's accounting was consistent with OCC guidance and GAAP; the sufficiency of the financial models used for forecasting losses in specialized loan portfolios; the requirements for adequate risk management of diverse banking practices; and other matters necessitating consideration of expert testimony.

Further, Bank holding companies and banks have become extremely complex institutions.  In this case, Plaintiffs have alleged that at the beginning of the Company Stock class

---

[7] See <u>DiFelice v. U.S. Airways, Inc.</u>, 436 F.Supp.2d (E.D. Va. June 26, 2006), *affirmed*, 497 F.3d 410 (4th Cir. 2007); <u>Brieger v. Tellabs, Inc.</u>, 2009 WL 1565203 (N.D.Ill. June 1, 2009); <u>Nelson v. IPALCO Enterprises, Inc.</u>, 480 F.Supp.2d 1061 (S.D. Ind. 2007); <u>Langraff v. Columbia Healthcare Corp.</u>, 2000 U.S. Dist. LEXIS 28 21831 (M.D. Tenn. May 24, 2000).
[8] <u>Tatum v. R.J. Reynolds Tobacco Co.</u>, discussed at 2011 WL 2160893 (M.D.N.C. 2012).

period, members of First Horizon's management were treating the company like a community bank although it had rapidly grown into a huge financial institution, and that management was not appropriately controlling the company and managing its risks.

In Plaintiffs' view, they were stymied in their proof of those allegations by the lack of adequate controls at the beginning of the Company Stock class period. It is common to be able to prove such facts through the internal audit function's review of the company. But that function was inadequate here, and made very few factual findings until well into the class period. Plaintiffs determined that most of the company's problems were first identified by the OCC, and virtually every document Plaintiffs identified as significantly helpful to prove Plaintiffs' allegations as to problems at First Horizon in 2006-2007 were subjected to a challenge by the OCC and First Horizon based on the bank examiner's privilege.

Class Counsel worked diligently to prosecute Plaintiffs' claims. Defendants not only moved to dismiss this case, but early on sought summary judgment, obliging Plaintiffs to prepare a lengthy and detailed affidavit under Fed.R.Civ.P. 56(f) describing the discovery they needed in order to oppose this motion. Plaintiffs ultimately prevailed on most aspects of the dismissal ruling, and succeeded in delaying summary judgment proceedings until after substantial discovery. Rather than accepting the Court's dismissal ruling, Defendants sought a certificate of appealability, which was granted. Plaintiffs then successfully opposed acceptance of an interlocutory appeal by the Sixth Circuit. Defendants then filed a motion to reconsider the Court's dismissal. Plaintiffs opposed this motion, and the Court denied it.

Class certification briefing was particularly hard fought. After first moving to certify the class in January 2010, Plaintiffs filed their amended motion for class certification in December 2010. Defendants opposed class certification with, *inter alia*, an 18-page declaration of expert Lassaad Turki. See Dkt. #138-3. Plaintiffs accordingly were obliged to dissect this report, in

17

addition to opposing all of Defendants' other arguments.  The Court ultimately largely granted class certification.

      **6.**      **The Professional Skill and Standing of Counsel on Both Sides.**  Class Counsel are experienced ERISA litigators who have brought many claims against plan fiduciaries.  See Exhibit 3 to the accompanying Doyle Decl.  Ellen Doyle is a pioneers in this field of 401(k) and ESOP litigation, having brought her first case several years before the Enron and Worldcom litigation; she has extensive experience in representing classes of ERISA plan participants who allege breaches of fiduciary duties.  Class Counsel were able to efficiently identify, focus and argue the issues, persuading the defense that a $6,000,000.00 settlement was warranted.  The quality and efficiency of Class Counsel's work on this litigation was superior and is reflected in the result.  Through many hours of research and fact investigation, Class Counsel developed a convincing case, resulting in denial of most aspects of Defendants' motions to dismiss and class certification.  The recovery for the Class is a direct result of effective advocacy and diligence of Class Counsel, which should be rewarded.

      Defense Counsel from the firm of Morgan Lewis are very well-known, experienced and prestigious ERISA litigators.  As the firm states on its website[9]:

> Morgan Lewis's ERISA Litigation Practice features more than 50 seasoned professionals across the country; attorneys in four of these cities were recognized in *Chambers USA 2010* as among the best in the business. Our ERISA Litigation Practice coordinates and deploys attorneys to defend cases on a national basis. Our unmatched depth enables us to defend and staff the largest, most complex cases with the required talent. It also permits us to bring the combined knowledge base of the largest practice of its type to bear on finding the best, most economical solutions to our clients' problems.

      Ms. Doyle and Joel Hurt unsuccessfully litigated the *US Airways* case, one of the first employer stock ERISA fiduciary breach cases tried to verdict, against the lawyers from Morgan

---

[9] http://www.morganlewis.com/index.cfm/nodeID/622130e5-d59f-4947-a513-584fd4bd9128/practiceAreaID/C42840C6-4830-4E62-A4F7-B021A995E12B/fuseaction/practiceArea.detail/print/1 (last checked August 14, 2012).

Lewis.  Ms. Doyle and Morgan Lewis' Charles Jackson subsequently co-authored an article for the ABA's Labor and Employment newsletter on a company stock case, and appeared as co-presenters at the American Bar Association's Employee Benefits Committee in 2010 on Trials of Employer Stock Cases.  All lawyers on the case were well-versed in ERISA, knowledgeable about the strengths and weaknesses of employer securities breach of fiduciary duty cases, and well-able to assess the likelihood of success and the risks of additional litigation.

**D.  Class Counsel's Expenses are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained**

Plaintiffs' counsel request reimbursement for expenses incurred in prosecuting this litigation on behalf of the Class in an aggregate amount of $175, 780.  The Court may award reimbursement of reasonable out-of-pocket expenses incurred by counsel and customarily charged to their clients, as long as these "were incidental and necessary to the representation." Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987); In re Xcel Energy Inc., 364 F.Supp.2d at 1000.  The submitted expenses were all reasonable, necessary, and directly related to the prosecution of this action, and include standard litigation-related costs and expenses such as costs for filing fees, experts, travel, copying, postage, and a fee paid by Named Plaintiff Wetegrove for his personal attorney.  The expenses incurred in this litigation are described in detail in the accompanying declarations and should be approved as reasonable and necessary.  See, e.g. Collins v. Olin Corp., No. 03-CV-945, 2010 US. Dist. LEXIS 39862, at *25 (D. Conn. Apr. 21, 2010) ("investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review" are among reimbursable expenses).

**E.      Case Contribution Awards to the Plaintiffs Should Be Granted**

A successful class action plaintiff may, in addition to his or her allocable share of the ultimate recovery, apply for, and, in the discretion of the court, receive, an additional award.  In re Delphi Corp. Securities, Derivative & "ERISA" Litigation, 248 F.R.D. 483, 507 (E.D.Mich. 2008).  In granting incentive awards to named plaintiffs, "courts consider not only the efforts of the plaintiffs in pursuing the claims, but also the important public policy of fostering enforcement of laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves."  Bussie v. Allmerica Fin. Corp., 1999 US. Dist. LEXIS 7793, at *11-*12 (D.Mass. May 19, 1999).  Here, each named Plaintiff devoted substantial effort and time assisting in the prosecution of this case.  They were sent copies of material filings and letters describing the case progress, and they reviewed these documents. They Named Plaintiffs regularly communicated with Class Counsel regarding the status and progress of the case and provided Class Counsel with necessary information and their time. Plaintiffs Joseph Yost and Gerald Sanders had their depositions taken, and each responded to document requests and interrogatories served by Defendants.  Plaintiffs Joseph Wetegrove and Anthony Smith stepped forward and joined this action to represent the release subclasses following the Court's conditional class certification order, thereby enabling the release subclasses to remain in the action and ultimately share in the recovery obtained on behalf of the Class

**IV.     CONCLUSION**

Class Counsel respectfully request that the Court approve the fee application in the amount of $1.8 million, award expenses in the amount of $175, 780, and award Case Contribution Awards of $7,500 for each of the Named Plaintiffs.

August 14, 2012                                    Respectfully submitted,

                                                   /s/ Ellen M. Doyle
                                                   Ellen M. Doyle (PA Bar 21854)
                                                   edoyle@stemberfeinstein.com
                                                   Pamina Ewing
                                                   pewing@stemberfeinstein.com
                                                   Joel R. Hurt
                                                   jhurt@stemberfeinstein.com
                                                   Maureen Davidson-Welling
                                                   mdavidsonwelling@stemberfeinstein.com

                                                   **STEMBER FEINSTEIN DOYLE PAYNE
                                                   & KRAVEC, LLC**
                                                   429 Forbes Avenue
                                                   Allegheny Building, 17th Floor
                                                   Pittsburgh, PA  15219
                                                   T: 412.281.8400
                                                   F: 412.281.1007

                                                   *Attorneys for Plaintiffs and the Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 14, 2012, the foregoing document was filed electronically with the Clerk of Court using the ECF system which will send notification of such filing to those persons registered in this case with the ECF system.

Respectfully submitted,

s/ Ellen M. Doyle

Ellen M. Doyle